# LIBRETTI *v.* UNITED STATES

No. 94–7427.   Argued October 3, 1995—Decided November 7, 1995

30

O'CONNOR, J., delivered the opinion of the Court, Parts I and II–A of which were joined by REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., Parts II–B and II–C of which were joined by REHNQUIST, C. J., and KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., and Parts III and IV of which were joined by REHNQUIST, C. J., and SCALIA, KENNEDY, THOMAS, and BREYER, JJ. SOUTER, J., *post*, p. 52, and GINSBURG, J., *post*, p. 53, filed opinions concurring in part and concurring in the judgment. STEVENS, J., filed a dissenting opinion, *post*, p. 54.

*Sara Sun Beale,* by appointment of the Court, 514 U. S. 1095, argued the cause for petitioner. With her on the briefs was *Paul K. Sun, Jr.*

*Malcolm L. Stewart* argued the cause for the United States. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris, Deputy Solicitor General Dreeben,* and *David S. Kris.**

JUSTICE O'CONNOR delivered the opinion of the Court.†

Petitioner Joseph Libretti pleaded guilty to engaging in a continuing criminal enterprise, in violation of 84 Stat. 1265, 21 U. S. C. § 848 (1988 ed. and Supp. V), and agreed to forfeit numerous items of his property to the Government. We must decide whether Federal Rule of Criminal Procedure 11(f) requires the District Court to determine whether a factual basis exists for a stipulated asset forfeiture embodied in a plea agreement, and whether the Federal Rule of Crimi-

---

*Briefs of *amici curiae* urging reversal were filed for the Forfeiture Endangers American Rights Foundation by *Brenda Grantland;* and for the National Association of Criminal Defense Lawyers by *David B. Smith* and *Richard J. Troberman.*

†JUSTICE SCALIA and JUSTICE THOMAS join all but Parts II–B and II–C of this opinion. JUSTICE SOUTER and JUSTICE GINSBURG join only Parts I and II.

nal Procedure 31(e) right to a special jury verdict on forfeiture can only be waived following specific advice from the District Court as to the existence and scope of this right and an express, written waiver.

I

In May 1992, Joseph Libretti was charged in a multicount superseding indictment with violations of various federal drug, firearms, and money-laundering laws. Included in the indictment was a count alleging that Libretti engaged in a continuing criminal enterprise (CCE), in violation of 21 U. S. C. § 848, by operating a cocaine and marijuana distribution organization in Wyoming and Colorado from 1984 to 1992. Conviction under § 848 subjects a defendant to, among other penalties, "the forfeiture prescribed in section 853."[1] 21 U. S. C. § 848(a). Accordingly, the indict-

---

[1] Section 853(a) provides for criminal forfeiture of drug-tainted property:

"(a) Property subject to criminal forfeiture. Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

"(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

"(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

"(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

"The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an

ment further alleged that the Government was entitled to forfeiture of property that was obtained from or used to facilitate Libretti's drug offenses, including, but not limited to, various assets specified in the indictment. See Fed. Rule Crim. Proc. 7(c)(2) ("No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture").

Trial began in September 1992. The Government presented testimony from 18 witnesses, including several individuals who had purchased cocaine or marijuana from Libretti, to establish Libretti's involvement in the possession and distribution of considerable amounts of narcotics. The testimony also reflected Libretti's purchase of a home, an automobile, and dozens of automatic and semiautomatic weapons during a time when he had only modest sources of legitimate income. Finally, the testimony revealed that Libretti stored large amounts of money and drugs in safety deposit boxes and storage facilities away from his home.

Following four days of testimony, Libretti and the Government entered into a plea agreement, by the terms of which Libretti agreed to plead guilty to the CCE count of the indictment (count 6). The Government in return agreed not to pursue additional charges against Libretti and to recommend that he be sentenced to the mandatory minimum of 20 years' imprisonment. Paragraph 10 of the plea agreement provided that Libretti would

> "transfer his right, title, and interest in all of his assets to the Division of Criminal Investigation of the Wyo-

---

offense may be fined not more than twice the gross profits or other proceeds."

In addition, § 853(p) provides that, when property subject to forfeiture under subsection (a) cannot be recovered for various reasons, "the court shall order the forfeiture of any other property of the defendant up to the value of" the forfeitable but unrecoverable assets.

ming Attorney General including, but not limited to: all real estate; all personal property, including guns, the computer, and every other item now in the possession of the United States; all bank accounts, investments, retirement accounts, cash, cashier's checks, travelers checks and funds of any kind."

Two other paragraphs of the plea agreement also made reference to the contemplated forfeiture. Paragraph 2 described the maximum statutory penalty for the offense to which Libretti agreed to plead guilty, which included "forfeiture of all known assets as prescribed in 21 U. S. C. § 853 and assets which are discovered at any later time up to $1,500,000." In paragraph 9, Libretti agreed to "identify all assets that were used to facilitate his criminal activity" and to "provide complete financial disclosure forms requiring the listing of assets and financial interests." Finally, Libretti acknowledged in the agreement "that by pleading guilty to Count Six of the Indictment, he waive[d] various constitutional rights, including the right to a jury trial." It is beyond dispute that Libretti received a favorable plea agreement. The Government recommended that Libretti receive the minimum sentence for conviction under § 848, and agreed to drop all other counts in the indictment. One of those counts charged Libretti with use of a firearm equipped with a silencer during the commission of a drug offense, which mandates a 30-year sentence consecutive to the term of imprisonment on the underlying drug offense. 18 U. S. C. § 924(c)(1). Libretti also faced a potential fine of up to $2 million. 21 U. S. C. §§ 848(a), 853(a).

At the subsequent hearing on the plea agreement, the trial judge advised Libretti of his rights, including his right to a jury trial. The court also clarified the consequences of Libretti's plea, including the facts that a plea of guilty would mean "the end of this trial," that "the jury [would] not . . . decide whether [he's] guilty or not," and that "all the property that's described in . . . Count 6 could be forfeited to

the United States." App. 87, 88. Libretti was then placed under oath. He admitted that his plea was voluntary and indicated that he had read and understood the significance of the indictment and the plea agreement, including the fact that "all of [his] property could be forfeited, the property that is owned by [him] by reason of any drug transaction." *Id.*, at 100. Libretti's only question about the plea agreement pertained to paragraph 2, which provided for future forfeiture of assets up to $1,500,000. The District Court assured Libretti that future forfeiture would be limited to subsequently discovered drug-tainted assets, and that his future legitimate income would not be forfeited. *Id.*, at 88–89. After a lengthy exchange, in which the court reviewed each subparagraph describing the violations that composed the CCE charge and Libretti acknowledged each factual allegation, the District Court found that the guilty plea was voluntary and factually based. *Id.*, at 121.

Following preparation of a presentence report, the District Court held a sentencing hearing, at which Libretti was sentenced to 20 years' imprisonment, to be followed by 5 years of supervised release, and ordered to pay a $5,000 fine as well as a mandatory $50 assessment and to perform 500 hours of community service. The Government filed a motion for forfeiture of Libretti's assets, in keeping with the plea agreement. Libretti's counsel offered no objection at the sentencing hearing, declaring that the forfeiture statute was "a harsh law" and "a bitter pill dealt by Congress," but conceding that it was "a pill we must swallow." *Id.*, at 149. At the conclusion of the hearing, however, Libretti stated on the record that he "would just like to object to what [he saw] as a failure to find any factual basis for the whole forfeiture." *Id.*, at 154. The District Judge noted the objection, but replied that "the evidence that I heard before me in the two *[sic]* days of trial I think is sufficient to warrant the granting of forfeiture. I think I have no alternative." *Ibid.* On December 23, 1992, the District Court entered an order

of forfeiture pursuant to 21 U. S. C. §853. The order listed specific property to be forfeited, including a parcel of real property in Wyoming, two condominiums, two automobiles, a mobile home, a diamond ring, various firearms, cash, several bank accounts, and a number of cashier's and traveler's checks. App. 155–164. One check was forfeited as a substitute asset. *Id.*, at 162. Libretti filed an appeal from the order of forfeiture.

While this appeal was pending, the District Court entertained third-party claims to some of the property ordered forfeited. See 21 U. S. C. §853(n). Following a March 1993 hearing, the court amended its forfeiture order to return certain property to the third-party claimants. The court also modified its order with respect to Libretti, stating that "it may be unjust to enforce the specific forfeiture provisions in the plea agreement" and reasoning that Libretti's concession to forfeiture in the plea agreement provided insufficient basis for the order of forfeiture. App. 309. The court ordered a Magistrate to conduct a hearing at which Libretti would be given the opportunity to show, by a preponderance of the evidence, that any portion of his property was not subject to forfeiture. Upon motion by the Government, the District Court stayed the proceedings before the Magistrate Judge pending resolution of Libretti's appeal.

The Court of Appeals for the Tenth Circuit rejected both of Libretti's challenges to the forfeiture order. 38 F. 3d 523 (1994). The court ruled first that the District Court lacked jurisdiction to consider Libretti's claims to the property ordered forfeited at the third-party hearing, because Libretti had filed a notice of appeal. After noting the divergence in the Courts of Appeals regarding the applicability of Rule 11(f) to forfeiture provisions in plea agreements, the court rejected Libretti's contention that Rule 11(f) requires a district court to ascertain a factual basis for a stipulated forfeiture of assets. This conclusion, the Court of Appeals reasoned, follows from the fact that forfeiture "is a part of the

sentence, not a part of the substantive offense." *Id.*, at 528. The Court of Appeals also determined that Libretti had waived his Rule 31(e) right to a jury determination of forfeitability, despite the fact that the District Court did not expressly advise Libretti of the existence and scope of that right during his plea colloquy. *Id.*, at 530–531. We granted certiorari to resolve disagreement among the Circuits as to the applicability of Rule 11(f) to asset forfeiture provisions contained in plea agreements[2] and the requisites for waiver of the right to a jury determination of forfeitability under Rule 31(e).[3]   514 U. S. 1035 (1995).

## II

Libretti insists that the District Court's forfeiture order must be set aside (or at least modified), because the court neglected to establish a "factual basis" for forfeiture of the

---

[2] Compare *United States* v. *Reckmeyer*, 786 F. 2d 1216, 1222 (CA4) (Rule 11(f) applies to forfeiture provisions in plea agreements), cert. denied, 479 U. S. 850 (1986), and *United States* v. *Roberts*, 749 F. 2d 404, 409 (CA7 1984) (same), cert. denied, 470 U. S. 1058 (1985), with *United States* v. *Boatner*, 966 F. 2d 1575, 1581 (CA11 1992) (Rule 11(f) does not apply to stipulated forfeiture provisions in plea agreements), *United States* v. *Bachynsky*, 949 F. 2d 722, 730–731 (CA5 1991) (Rule 11(f) does not apply to forfeiture provisions, but a forfeiture order will be upheld only if the record provides a factual basis for forfeiture), cert. denied, 506 U. S. 850 (1992), and 38 F. 3d 523, 528 (CA10 1994) (case below).

[3] Compare, *e. g.*, *id.*, at 531 ("specific reference to" the Rule 31(e) right to a special jury verdict is not required when a defendant's "unambiguous plea agreement" and "knowing and voluntary plea" establish waiver); *United States* v. *Robinson*, 8 F. 3d 418, 421 (CA7 1993) ("[A] defendant's waiver of his statutory right [under Rule 31(e)] to have a jury determine which portion of his property is subject to forfeiture is only valid if knowingly and voluntarily made"); *United States* v. *Garrett*, 727 F. 2d 1003, 1012 (CA11 1984) (a defendant has a constitutional right to a jury trial to determine forfeitability; waiver of that right must be in writing), aff'd on other grounds, 471 U. S. 773 (1985); *United States* v. *Zang*, 703 F. 2d 1186, 1194–1195 (CA10 1982) ("The parties can waive their right to a special verdict [under Rule 31(e)] by not making a timely request"), cert. denied, 464 U. S. 828 (1983).

property covered by the order under Federal Rule of Criminal Procedure 11(f). Absent such a finding, Libretti argues, even his concession to forfeiture in the plea agreement cannot authorize the forfeiture.

## A

Libretti's first claim is that the Rule by its very terms applies to a forfeiture provision contained in a plea agreement. Accordingly, our analysis must begin with the text of Rule 11(f):

> "Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

By its plain terms, the Rule applies only to a "plea of guilty." Our precedent makes clear that this language refers to a defendant's admission of guilt of a substantive criminal offense as charged in an indictment and his waiver of the right to a jury determination on that charge. See, e. g., *United States* v. *Broce*, 488 U. S. 563, 570 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime"); *North Carolina* v. *Alford*, 400 U. S. 25, 32 (1970); *Boykin* v. *Alabama*, 395 U. S. 238, 242 (1969); *McCarthy* v. *United States*, 394 U. S. 459, 466 (1969). With this definition in mind, we have held that a district judge satisfies the requirements of Rule 11(f) when he "determine[s] 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" *Id.*, at 467 (quoting Advisory Committee's Notes on Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 730).

A forfeiture provision embodied in a plea agreement is of an entirely different nature. Forfeiture is an element of the

sentence imposed *following* conviction or, as here, a plea of guilty, and thus falls outside the scope of Rule 11(f). The text of the relevant statutory provisions makes clear that Congress conceived of forfeiture as punishment for the commission of various drug and racketeering crimes. A person convicted of engaging in a continuing criminal enterprise "shall be *sentenced* . . . to the forfeiture prescribed in section 853." 21 U. S. C. § 848(a) (emphasis added). Forfeiture is imposed "in addition to any other *sentence*." 21 U. S. C. § 853(a) (emphasis added). See also 18 U. S. C. § 1963 (forfeiture is imposed "in addition to any other *sentence*" for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO)). The legislative history of the Comprehensive Crime Control Act of 1984, Pub. L. 98–473, Tit. II, 98 Stat. 1976, also characterizes criminal forfeiture as punishment. See, *e. g.,* S. Rep. No. 98–225, p. 193 (1983) (criminal forfeiture "is imposed as a sanction against the defendant upon his conviction"). Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct in violation of the federal drug and racketeering laws, not as a separate substantive offense.

Our precedents have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense. In *Alexander* v. *United States,* 509 U. S. 544 (1993), we observed that the criminal forfeiture authorized by the RICO forfeiture statute "is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.'" *Id.,* at 558. Similarly, in *United States* v. *$8,850,* 461 U. S. 555 (1983), we recognized that a "criminal proceeding . . . may often include forfeiture as part of the sentence." *Id.,* at 567. And in *Austin* v. *United States,* 509 U. S. 602 (1993), we concluded that even the *in rem* civil forfeiture authorized by 21 U. S. C. §§ 881(a)(4) and (a)(7) is punitive in nature, so that forfeiture imposed under those subsections is subject to the limitations of the Eighth Amendment's Excessive Fines

Clause. 509 U. S., at 619–622. Libretti himself conceded below that criminal forfeiture "is a part of the sentence, not a part of the substantive offense." 38 F. 3d, at 528.

It is true, as Libretti points out, that we said in *Caplin & Drysdale, Chartered* v. *United States*, 491 U. S. 617 (1989), that "forfeiture is a substantive charge in the indictment against a defendant." *Id.*, at 628, n. 5. That statement responded to the defendant's claim that his Sixth Amendment right to counsel "for his defense" could be transformed into a defense to a forfeiture count in the indictment. We intended only to suggest that a defendant cannot escape an otherwise appropriate forfeiture sanction by pointing to his need for counsel to represent him on the underlying charges. Elsewhere in that opinion we recognized that forfeiture is a "criminal sanction," *id.*, at 634, and is imposed as a sentence under § 853, *id.*, at 620, n. 1.

Libretti nonetheless insists that the criminal forfeiture for which § 853 provides is not "simply" an aspect of sentencing, but is, in essence, a hybrid that shares elements of both a substantive charge and a punishment imposed for criminal activity. In support of this contention, Libretti points to three Federal Rules of Criminal Procedure that, according to him, treat forfeiture as a substantive criminal charge. Rule 7(c)(2) provides that "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture." If the indictment or information alleges that a defendant's property is subject to forfeiture, "a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." Fed. Rule Crim. Proc. 31(e). And a finding of forfeitability must be embodied in a judgment. Fed. Rule Crim. Proc. 32(d)(2) ("When a verdict contains a finding of criminal forfeiture, the judgment must authorize the Attorney General to seize the interest or property subject to forfeiture on terms that the court considers proper").

Although the procedural safeguards generated by these Rules are unique in the realm of sentencing, they do not change the fundamental nature of criminal forfeiture. The fact that the Rules attach heightened procedural protections to imposition of criminal forfeiture as punishment for certain types of criminal conduct cannot alter the simple fact that forfeiture is precisely that: punishment. The Advisory Committee's "assumption" that "the amount of the interest or property subject to criminal forfeiture is an element of the offense to be alleged and proved," Advisory Committee's Notes on Fed. Rule Crim. Proc. 31, 18 U. S. C. App., p. 786, does not persuade us otherwise. The Committee's assumption runs counter to the weighty authority discussed above, all of which indicates that criminal forfeiture is an element of the sentence imposed for a violation of certain drug and racketeering laws. Moreover, even supposing that the Committee's assumption is authoritative evidence with respect to the amendments to Rules 7, 31, and 32, it has no bearing on the proper construction of Rule 11. *Tome* v. *United States*, 513 U. S. 150 (1995), is not to the contrary. The *Tome* plurality treated the Advisory Committee's Notes on Federal Rule of Evidence 801(d)(1)(B) as relevant evidence of the drafters' intent *as to the meaning of that Rule.* 513 U. S., at 160–163. In contrast, Libretti seeks to use the Note appended to Rule 31 to elucidate the meaning of an entirely distinct Rule. We cannot agree that the Advisory Committee's Notes on the 1972 amendment to Rule 31(e) shed any particular light on the meaning of the language of Rule 11(f), which was added by amendment to Rule 11 in 1966.

B

Libretti next advances three policy arguments for construing Rule 11(f) to reach asset forfeiture provisions of plea agreements. First, he claims, Rule 11(f)'s factual basis inquiry is essential to ensuring that a forfeiture agreement is knowing and voluntary. Next, Libretti declares that a Rule

11(f) inquiry will protect against Government overreaching. And lastly, Libretti insists that a factual basis inquiry is necessary to ensure that the rights of third-party claimants are fully protected. We consider these contentions in turn.

We are unpersuaded that the Rule 11(f) inquiry is necessary to guarantee that a forfeiture agreement is knowing and voluntary. Whether a stipulated asset forfeiture is "factually based" is a distinct inquiry from the question whether the defendant entered an agreement to forfeit assets knowingly and voluntarily. Libretti correctly points out that Rule 11(f) is intended to ensure that a defendant's "plea of guilty" is knowing and voluntary. *McCarthy*, 394 U. S., at 472 (the Rule 11 inquiry is "designed to facilitate a more accurate determination of the voluntariness of [a] plea"); Advisory Committee's Notes on Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 730 (Rule 11(f) protects defendants who do not "realiz[e] that [their] conduct does not actually fall within the charge"). But a "plea of guilty" and a forfeiture provision contained in a plea agreement are different matters altogether. Forfeiture, as we have said, is a part of the sentence. If the voluntariness of a defendant's concession to imposition of a particular sentence is questionable, the relevant inquiry is whether the sentencing stipulation was informed and uncoerced on the part of the defendant, not whether it is factually sound.

Libretti's second argument—that a Rule 11(f) factual basis inquiry is necessary to prevent prosecutorial overreaching—proves equally unavailing. As Libretti properly observes, § 853 limits forfeiture by establishing a factual nexus requirement: Only drug-tainted assets may be forfeited. Libretti suggests that failure to ensure, by means of a Rule 11(f) inquiry, that this factual nexus exists will open the door to voluntary forfeiture agreements that exceed the forfeiture authorized by statute, particularly in light of the Government's direct financial interest in forfeiture as a source of revenue and the disparity in bargaining power between the

Government and a defendant. We recognized in *Caplin & Drysdale* that the broad forfeiture provisions carry the potential for Government abuse and "can be devastating when used unjustly." 491 U. S., at 634. Nonetheless, we concluded that "[c]ases involving particular abuses can be dealt with individually by the lower courts, when (and if) any such cases arise." *Id.*, at 635. However valid Libretti's concern about prosecutorial overreaching may be, Rule 11(f) simply does not, on its face, address it.

We do not mean to suggest that a district court must simply accept a defendant's agreement to forfeit property, particularly when that agreement is not accompanied by a stipulation of facts supporting forfeiture, or when the trial judge for other reasons finds the agreement problematic. In this regard, we note that the Department of Justice recently issued a Revised Policy Regarding Forfeiture by Settlement and Plea Bargaining in Civil and Criminal Actions, Directive 94–7 (Nov. 1994), to instruct that, among the procedures necessary to ensure a valid forfeiture agreement, "[t]he settlement to forfeit property must be in writing and the defendant must concede facts supporting the forfeiture." *Id.*, at 13. In this case, however, we need not determine the precise scope of a district court's independent obligation, if any, to inquire into the propriety of a stipulated asset forfeiture embodied in a plea agreement. We note that the Sentencing Guidelines direct only that a district court "may" accept an agreement reached by the parties as to a specific, appropriate sentence, as long as the sentence is within the applicable guideline range or departs from that range "for justifiable reasons." United States Sentencing Commission, Guidelines Manual § 6B1.2(c)(2) (Nov. 1993). Libretti's plea agreement correctly recognized that the District Court was not bound by the parties' agreement as to the appropriate sentence: "[T]he sentencing judge is neither a party to nor bound by this plea agreement and is free to impose whatever sentence he feels is justified." App. 81, ¶ 11.

Libretti finally argues that a Rule 11(f) factual basis inquiry is essential to preserving third-party claimants' rights. A defendant who has no interest in particular assets, the argument goes, will have little if any incentive to resist forfeiture of those assets, even if there is no statutory basis for their forfeiture. Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U. S. C. § 853(n). This hearing, Libretti claims, is inadequate to safeguard third-party rights, since the entry of a forfeiture order deprives third-party claimants of the right to a jury trial and reverses the burden of proof. He concludes that insisting on a factual basis inquiry before entry of the forfeiture order will lessen the need for third-party hearings following a broad-ranging forfeiture agreement, and may even result in the conservation of scarce judicial resources. Whatever the merits of this argument as a matter of policy, Congress has determined that § 853(n), rather than Rule 11(f), provides the means by which third-party rights must be vindicated. Third-party claimants are not party to Rule 11(f) proceedings, and Libretti's assertion that their interests are best protected therein fits poorly within our adversary system of justice.

## C

Contrary to the suggestion of the dissent, *post*, at 57, the District Court did not rest its forfeiture order on nothing more than Libretti's stipulation that certain assets were forfeitable. In fact, there is ample evidence that the District Court both understood the statutory requisites for criminal forfeiture and concluded that they were satisfied on the facts of this case at the time the sentence was imposed. First, the District Judge correctly recognized the factual nexus requirement established by § 853. App. 89 (change-of-plea hearing) ("[I]t has to be the product of a drug transaction to be forfeited"). Count 6 of the indictment specified numerous

items of property alleged to be subject to forfeiture under that statute, including a parcel of real property in Wyoming; two automobiles; over $100,000 in cash proceeds from drug transactions; $12,000 in cash that Libretti had stored inside a paint can at his home; a diamond ring; "[a]ll United States currency and travelers checks" recovered from Libretti's storage lockers, safes, home, and person; a mobile home; a computer system; four bank accounts; two GNMA investment certificates; bonds; three cashier's checks; and the contents of two safe deposit boxes. Additional property was identified in a bill of particulars and a restraining order issued, and subsequently amended, by the District Court pursuant to 21 U. S. C. § 853(e) ("Upon application of the United States, the court may enter a restraining order . . . to preserve the availability of property described in subsection (a) of this section for forfeiture under this section"). After one week of trial, the parties submitted to the court an agreement which set out, in detail, specific items of property to be forfeited following Libretti's plea of guilty, including "all real estate; all personal property, including guns, the computer, and every other item now in the possession of the United States; all bank accounts, investments, retirement accounts, cash, cashier's checks, travelers checks and funds of any kind." App. 81. The plea agreement also explained that the maximum penalty for the offense to which Libretti agreed to plead guilty included "forfeiture of all known assets as prescribed in 21 U. S. C. § 853 and assets which are discovered at any later time up to $1,500,000." App. 79.

Before issuing the order of forfeiture, the trial judge listened to four days of testimony, in which Government witnesses detailed numerous drug transactions with Libretti. See, e. g., 2 Tr. 124–126, 137–139; 3 id., at 271–272; 4 id., at 495–501; 5 id., at 946–949. One witness recounted Libretti's purchase of a home in 1985 with a $100,000 down payment, at a time during which he was earning an annual salary of approximately $20,000. 2 id., at 179–180, 210–216; App. 123

(Presentence Report, Prosecutor's Statement ¶ 6); Presentence Report ¶ 37. Another told of Libretti's purchase of a sports car with a check for $19,114. 5 Tr. 907–913. Other witnesses described Libretti's possession, in his capacity as a federal firearms dealer, of numerous automatic and semiautomatic firearms, later determined to be worth at least $243,000. See, e. g., 2 id., at 140–141, 156–162; 5 id., at 844–853; App. 123 (Presentence Report, Prosecutor's Statement ¶ 9). One witness testified that Libretti admitted having "quite a bit of money stashed away" in safe deposit boxes, 5 Tr. 834, and on at least one occasion had "a couple thousand" dollars in cash "sitting around," id., at 835. Other witnesses established that Libretti often stored cash and drugs in safe deposit boxes and storage facilities away from his home. See, e. g., 2 id., at 155–156; 4 id., at 718–720, 738–743. One of Libretti's drug customers testified that he broke into a storage facility at which Libretti had rented a storage locker and discovered a briefcase containing a large amount of cash (later estimated in the presentence report to be approximately $150,000), a large block of cocaine, and five large trash bags, at least one of which was filled with marijuana. Id., at 558–566, 588–589.

Prior to sentencing, the court received the presentence investigation report, which contained, among other things, a summary of Libretti's legitimate income during the relevant time periods. During 1985 and 1986, Libretti worked as a restaurant and grocery store manager, earning approximately $20,000 per year. In early 1987, he was employed as a temporary stock broker and was paid on commission only. Later that year, he managed a Tenneco thrift store. In 1989, Libretti reported an income of approximately $50,000 from his firearms business. During 1988 and 1989, Libretti also owned a partnership interest in two condominiums; he reported that the rental income did not meet his expenses and thus he did not earn a profit. Between June 1989 and his arrest in December 1991, Libretti worked as a full-time

accounting supervisor, earning a salary of approximately $40,000 per year. Presentence Report ¶¶ 35–37.

Included in the presentence report was a prosecutor's statement detailing the amounts of cocaine and marijuana involved in Libretti's drug operation and various sums of money Libretti earned from his drug dealing. App. 122–135. The statement described Libretti's substantial expenditures, including the $100,000 cash deposit on a house in 1985 ($72,000 of which was derived from Libretti's sale of drugs) and the purchase of a $20,000 mortgage in 1986 (again, allegedly with proceeds from his distribution of drugs). *Id.*, at 123. Paragraph 12 reported that Libretti had opened a safe deposit box in 1987 in which he placed $48,000 in cash. On another occasion, Libretti placed approximately $10,000 into an account bearing his brother's name. *Id.*, at 124–125. The statement described Libretti's practice of storing large amounts of cash and drugs in safes, storage lockers, and safe deposit boxes. *Id.*, at 124, 129. Libretti also stored drugs, a weapon, and a cashier's check for $65,000 in his personal locker at his place of employment. *Id.*, at 129. The statement related Libretti's investment of at least $243,000 in numerous firearms. *Id.*, at 123–124. These funds again reportedly derived from Libretti's drug distribution activities; the statement indicated that "Libretti's gun business was used to launder drug proceeds" and served as a means by which Libretti could "justify his income since [he] was not working at times during the conspiracy and, when he was working, was not bringing in the money that would pay for the Lakewood house and other investments." *Id.*, at 127. Finally, the statement suggested that substantial sums of cash derived from Libretti's drug activities were never recovered by law enforcement authorities. *Id.*, at 134. Defense counsel conceded at the sentencing hearing that "the [presentence] report of Mr. Libretti's background, education, financial circumstances are *[sic]* accurate." *Id.*, at 138. In light of these facts, defense counsel acknowledged that "the

48

forfeiture is going to take regular money and illegal money under the substitute assets" provision of § 853. *Id.*, at 149.

In view of the plea agreement, the indictment, and the amended restraining order, the trial judge issued an order forfeiting to the Government the Wyoming lot, both condominiums, both automobiles, $8,000 in cash proceeds of Libretti's drug transactions, the diamond ring, the mobile home, all firearms, an IRA account, three bank accounts, bonds, two GNMA certificates, and several cashier's and traveler's checks. One check was ordered forfeited as a substitute asset "for assets dissipated and otherwise expended by Libretti." *Id.*, at 162.

It is not, as Libretti maintains, implausible that the court concluded on the record before it that the forfeiture order was appropriate. Following Libretti's objection to the forfeiture order for lack of factual foundation, the trial judge replied that "the evidence that I heard before me in the two *[sic]* days of trial I think is sufficient to warrant the granting of forfeiture." *Id.*, at 154. We cannot say that the District Judge, despite his subsequent uncertainty, erred in issuing the forfeiture order on the facts before him.

III

Libretti also challenges the adequacy of his waiver of a jury determination as to the forfeitability of his property under Federal Rule of Criminal Procedure 31(e). The right, he argues, has both a constitutional and a statutory foundation, and cannot be waived absent specific advice from the district court as to the nature and scope of this right and an express, written agreement to forgo the jury determination on forfeitability. We disagree.

Federal Rule of Criminal Procedure 31(e) provides that, "[i]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." Libretti would have

us equate this statutory right to a jury determination of for-
feitability with the familiar Sixth Amendment right to a jury
determination of guilt or innocence. See, *e. g., United States*
v. *Gaudin,* 515 U. S. 506, 511 (1995) ("The Constitution gives
a criminal defendant the right to demand that a jury find
him guilty of all the elements of the crime with which he is
charged"). Without disparaging the importance of the right
provided by Rule 31(e), our analysis of the nature of criminal
forfeiture as an aspect of sentencing compels the conclusion
that the right to a jury verdict on forfeitability does not fall
within the Sixth Amendment's constitutional protection.
Our cases have made abundantly clear that a defendant does
not enjoy a constitutional right to a jury determination as
to the appropriate sentence to be imposed. See, *e. g.,*
*McMillan* v. *Pennsylvania,* 477 U. S. 79, 93 (1986) ("[T]here
is no Sixth Amendment right to jury sentencing, even where
the sentence turns on specific findings of fact"); *Cabana* v.
*Bullock,* 474 U. S. 376, 385 (1986) ("The decision whether
a particular punishment . . . is appropriate in any given
case is not one that we have ever required to be made by a
jury"); *Spaziano* v. *Florida,* 468 U. S. 447, 459 (1984) (no
right to a jury determination as to the imposition of the
death penalty).

Given that the right to a jury determination of forfeitabil-
ity is merely statutory in origin, we do not accept Libretti's
suggestion that the plea agreement must make specific refer-
ence to Rule 31(e). Nor must the district court specifically
advise a defendant that a plea of guilty will result in waiver
of the Rule 31(e) right. Federal Rule of Criminal Procedure
11(c) details the information a district court must communi-
cate to a defendant in order to ensure that a guilty plea is
valid. Advisory Committee's Notes on 1974 Amendment of
Fed. Rule Crim. Proc. 11(c), 18 U. S. C. App., p. 731 (the Rule
"codifies . . . the requirements of *Boykin* v. *Alabama,* 395
U. S. 238 . . . (1969), which held that a defendant must be
apprised of the fact that he relinquishes certain *constitu-*

*tional* rights by pleading guilty") (emphasis added). Specific advice regarding the Rule 31(e) right is not among the Rule 11(c) safeguards, and we decline Libretti's invitation to expand upon the required plea colloquy. That is not to say, however, that a trial judge may not mention the nature and scope of the Rule 31(e) right during a plea colloquy. In fact, the Advisory Committee's Notes make plain that "a judge is free to" inform a defendant about specific consequences that might follow from a plea of guilty if the judge "feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant." Advisory Committee's Notes on 1974 Amendment of Fed. Rule Crim. Proc. 11, 18 U. S. C. App., p. 731.

On these facts, Libretti's waiver of a jury determination as to the scope of forfeiture was plainly adequate. In the plea agreement, Libretti "acknowledge[d] that by pleading guilty to Count Six of the Indictment, he waive[d] various constitutional rights, including the right to a jury trial and a speedy trial." App. 80. He stipulated to the forfeiture of specific assets. *Id.*, at 80–81. The District Court engaged Libretti in an extensive colloquy at his change-of-plea hearing, during which the court reviewed with Libretti the consequences of his guilty plea, including the fact that the plea would result in dismissal of the jury. Libretti's responses made clear that he fully understood the nature and consequences of his guilty plea and was prepared to be sentenced in accordance with the plea agreement. At the sentencing hearing, neither Libretti nor his counsel specifically objected to resolution of forfeiture issues by the court without a jury. See, *e. g., id.*, at 150, 154.

In addition, Libretti was represented by counsel at all stages of trial and sentencing. Apart from the small class of rights that require specific advice from the court under Rule 11(c), it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and con-

stitutional rights that a guilty plea would forgo. Libretti
has made no claim of ineffectiveness of counsel before this
Court.  As we noted in *Broce*, "[a] failure by counsel to pro-
vide advice may form the basis of a claim of ineffective as-
sistance of counsel, but absent such a claim it cannot serve
as the predicate for setting aside a valid plea." 488 U. S.,
at 574.

Of course, a district judge must not mislead a defendant
regarding the procedures to be followed in determining
whether the forfeiture contemplated in a plea agreement will
be imposed, nor should the court permit a defendant's obvi-
ous confusion about those procedures to stand uncorrected.
On this record, however, we find no hint that Libretti labored
under any misapprehension.  Although the District Judge
did not spell out for Libretti that, had he declined to enter a
plea of guilty, and had the trial gone forward, the jury would
eventually have been required to determine which of Libret-
ti's assets were forfeitable, when viewed in its entirety, the
plea colloquy made it abundantly clear that the plea agree-
ment would end any proceedings before the jury and would
lead directly to sentencing by the court.  As the Court of
Appeals observed, "there is no evidence at [the change-of-
plea] hearing that [Libretti] wanted a jury trial on the for-
feiture issue, or thought he was going to have one." 38
F. 3d, at 531.  Taken together, the plea agreement and the
plea colloquy waived Libretti's right to insist on a jury deter-
mination of forfeitability under Rule 31(e).

## IV

For these reasons, we reject Libretti's challenges to the
District Court's forfeiture order.  Under the plain language
of Rule 11(f), the District Court is not obliged to inquire into
the factual basis for a stipulated forfeiture of assets embod-
ied in a plea agreement.  And because Libretti agreed to
this forfeiture and waived his "right to a jury trial," he can-
not now complain that he did not receive the special jury

verdict on forfeitability for which Rule 31(e) provides. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SOUTER, concurring in part and concurring in the judgment.

I join in the judgment and Parts I and II of the Court's opinion. I would not reach the question of a Sixth Amendment right to trial by jury on the scope of forfeiture or whether the Constitution obliges a trial court to advise a defendant of whatever jury trial right he may have. In cases like this one, any such right to instruction will be satisfied by the court's obligatory advice to the defendant of the right to jury trial generally. See Fed. Rule Crim. Proc. 11(c)(3) ("Before accepting a plea of guilty . . . the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, . . . that the defendant has . . . the right to be tried by a jury"). It is reasonable to understand the scope of the right as covering all matters charged in the indictment, which under Rule 7(c)(2) will include the forfeiture claim. Since a defendant will have been provided a copy of the indictment, see Fed. Rule Crim. Proc. 10 ("The defendant shall be given a copy of the indictment or information before being called upon to plead"), and will have heard it read or summarized, see *ibid.* ("Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to the defendant the substance of the charge"), he will naturally understand that his right to jury trial covers a verdict on the forfeiture claim.

If, in speaking to the defendant or in other statements within his hearing, the court should affirmatively say or suggest that the right to jury trial would not extend to the forfeiture, that would be error under the current law, whatever the constitutional status of that right may be. While there is some reason to argue that the court's colloquy with the

defendant in this case was misleading, see App. 87 ("[I]f you plead guilty . . . . the jury is not going to decide whether you're guilty or not"), I think JUSTICE GINSBURG is right to conclude otherwise, for the reasons given in her separate opinion.

JUSTICE GINSBURG, concurring in part and concurring in the judgment.

Rule 11(f), I agree for reasons the Court states, does not impose on district courts an obligation to find a "factual basis" for asset forfeitures stipulated in a plea agreement. I therefore join in Parts I and II of the Court's opinion and concur in the judgment. But the jury-trial right for which Rule 31(e) provides, as I see it, must be known in order to be given up voluntarily. I therefore set out briefly my view of the second issue the Court decides.

At the plea hearing, the District Court carefully and comprehensively informed Libretti that his guilty plea would waive his right to jury trial on the crimes charged in the indictment. The court did not then refer to the unusual jury-trial right on criminal forfeiture provided by Rule 31(e) of the Federal Rules of Criminal Procedure:

> "If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any."

See also Fed. Rule Crim. Proc. 7(c)(2) ("No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture"); Fed. Rule Crim. Proc. 11(c)(1) (court must address defendant personally in open court and inform him of "the nature of the charge" when plea of guilty is offered).

Just as intelligent waiver of trial by jury on the underlying offense requires that the defendant be advised of the right,

so waiver of the extraordinary jury-trial right on forfeiture should turn on the defendant's awareness of the right his plea will override. That right, uncommon as it is, may not be brought home to a defendant through a bare reading of the forfeiture clause in the indictment. Clarity, however, is easily achieved. In cases like Libretti's, trial judges can readily avoid unknowing relinquishment of the procedural right to a jury verdict on forfeiture by routinely apprising defendants, at plea hearings, of Rule 31(e)'s atypical special-verdict requirement.

Failure to mention Rule 31(e) at Libretti's plea hearing is not cause for revisiting the forfeiture of his property, however, because at least two pretrial references were made to Rule 31(e)'s requirement. First, there was a brief exchange between court and counsel on the need for a special-verdict form. 1 Tr. 8. Second, and more informative, the trial judge explained to the jurors during *voir dire* that the indictment included

> "a provision for a forfeiture of all property of any kind constituting or derived from proceeds that Mr. Libretti received directly or indirectly from engaging in said continuing criminal enterprise. And that's a subject matter on which the jury will be required at the end of the case to answer a specific question relating to it." *Id.*, at 188.

In view of this statement to the lay triers—telling them in Libretti's presence that they would be called upon specifically to decide the matter of forfeiture—Libretti cannot persuasively plead ignorance of the special-verdict right Rule 31(e) prescribes.

JUSTICE STEVENS, dissenting.

While I agree with the Court's conclusions (1) that Federal Rule of Criminal Procedure 11(f) does not create a duty to determine that there is a factual basis for a forfeiture of

assets pursuant to 21 U. S. C. § 853 and (2) that the record in this case does establish a factual basis for forfeiting the assets described in Count 6 of the indictment, I believe it important to emphasize the underlying proposition that the law—rather than any agreement between the parties—defines the limits on the district court's authority to forfeit a defendant's property. Moreover, entirely apart from Rule 11(f), the district court has a legal obligation to determine that there is a factual basis for the judgment entered upon a guilty plea. For that reason, the Court of Appeals was plainly wrong in holding that simply because the defendant unequivocally agreed to "'forfeit all property,'" the *law* authorized the forfeiture of all of his assets. 38 F. 3d 523, 526 (CA10 1994).

The facts of this case well illustrate the particular need for the district court to determine independently that a factual basis supports forfeiture judgments that it enters pursuant to plea agreements. As the Court correctly notes, this defendant received a favorable plea agreement. The record demonstrates that the facts would have supported a much longer term of imprisonment than was actually imposed. In such circumstance, it is not unthinkable that a wealthy defendant might bargain for a light sentence by voluntarily "forfeiting" property to which the government had no statutory entitlement. This, of course, is not the law. No matter what a defendant may be willing to pay for a favorable sentence, the law defines the outer boundaries of a permissible forfeiture. A court is not free to exceed those boundaries solely because a defendant has agreed to permit it to do so. As Judge Cudahy aptly put it, "[t]he mere fact that the defendant has agreed that an item is forfeitable, in a plea agreement, does not make it so." *United States* v. *Roberts*, 749 F. 2d 404, 409 (CA7 1984).

The proposition that the law alone defines the limits of a court's power to enter a judgment can be traced to this Court's early precedents. In *Bigelow* v. *Forrest*, 9 Wall. 339

(1870), the Court explained that a court "transcend[s] its jurisdiction" when it orders the forfeiture of property beyond that authorized by statute. *Id.*, at 351. In a similar vein, *Ex parte Lange*, 18 Wall. 163 (1874), concluded that a judgment imposing punishment in excess of statutory authorization is not merely voidable, but "void." *Id.*, at 178. Precisely because extrastatutory punishments implicate the very power of a court to act, the district court must, entirely apart from the specific procedure mandated by Rule 11(f), satisfy itself that there is a factual basis for any judgment entered pursuant to a guilty plea that threatens to exceed statutory bounds.[1] Were a court to do otherwise, it would permit the parties to define the limits of its power.

In sum, Rule 11(f) does not create a substantive right. Instead, it prescribes a procedure that is intended to protect every defendant's pre-existing right not to receive any sentence beyond statutorily prescribed limits. Rule 11(f) states that if there is no factual basis for the guilty plea, the court has no power to "enter a judgment upon such plea . . . ." In so stating, the Rule does not impliedly authorize courts to impose sentences upon a plea of guilty greater than the maximum prescribed for the admitted offense. The pre-existing substantive limits on the court's power to impose a judgment upon a plea of guilty, which apply to the forfeiture aspect of the judgment as well as to the finding of guilt, preclude such a result. Nothing in the Rule suggests otherwise.

Because the foregoing thoughts are implicit in this Court's independent examination of the record to assure itself that there is indeed a factual basis for the forfeiture of the property described in Count 6, and for the further conclusion that the forfeiture order does not extend beyond the line that the law has drawn, I endorse almost all of the Court's opinion.

---

[1] Of course, the court's power to act is not similarly implicated when it imposes a sentence that is arguably erroneous but nonetheless within the range authorized by statute.

Nevertheless, I do not agree with the Court's disposition of the case because I believe the opinion of the Court of Appeals can fairly be read to approve of the forfeiture of *all* petitioner's property, rather than just the assets described in Count 6.[2]

Although the majority marshals ample support for much of the forfeiture authorized here, the record simply does not provide a factual basis for the whole of it. For example, nothing in the Court's opinion provides a basis for concluding that the small bank account that petitioner opened while a young boy, and which had not been augmented since 1975, should be subject to forfeiture. Nor can all of his assets necessarily be deemed subject to forfeiture as "substitute assets." As the Court recognizes, the District Court determined that only one check was subject to forfeiture on that basis. *Ante*, at 48.

The sole basis for the wholesale forfeiture affirmed here stems from one paragraph in the defendant's plea agreement which states his willingness to "transfer his right, title, and interest in all of his assets to the Division of Criminal Investigation of the Wyoming Attorney General."[3] App. 81. As I have explained, however, a defendant's bare stipulation does not determine what property a court may forfeit. The district court must independently make that determination. Here, the record reveals that the District Court had *not* determined that a factual basis existed for the sweeping forfeiture it ordered. Indeed, the District Court subsequently sought to hold a hearing for the very purpose of determining whether a factual basis existed. The District Court was precluded from undertaking that necessary inquiry only because this *pro se* petitioner filed an early notice of appeal

---

[2] Moreover, I agree with JUSTICE GINSBURG that the jury trial right that Rule 31(e) provides must be known in order to be given up voluntarily.

[3] The record does not make clear why the property would be transferred to state, rather than federal, law enforcement authorities.

that divested the court of jurisdiction. However, that jurisdictional bar did not, and could not, relieve the District Court of its prior duty to find a factual basis for its forfeiture judgment.

Because the District Court had not assured itself that its judgment fell within the bounds established by law, and because the record does not support the conclusion that it did, I would vacate and remand for further proceedings consistent with this opinion.