
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff - Appellee,<br><br>　v.<br><br>ANTOINE DOUGLASS JOHNSON,<br>M.D.,<br><br>　　　　　Defendant - Appellant. | No. 12-30129<br><br>D.C. No. 3:09-cr-05703-RBL-1<br><br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff - Appellee,<br><br>　v.<br><br>LAWANDA JOHNSON,<br><br>　　　　　Defendant - Appellant. | No. 12-30134<br><br>D.C. No. 3:09-cr-05703-RBL-2 |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

---

　　　* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted August 27, 2013
Seattle, Washington

Before: McKEOWN and CLIFTON, Circuit Judges, and RAKOFF, Senior District Judge.[**]

Defendants Antoine and LaWanda Johnson were convicted by jury of multiple counts of health care fraud and filing a false tax return, and Antoine Johnson was also convicted on charges of illegal distribution of a controlled substance. On appeal, they challenge their convictions and sentences on a variety of grounds. We affirm.

## I. Joint Challenges

Both defendants ask for reversal of their convictions because the district court refused to give a jury instruction stating that Elizabeth Hughes was an accomplice and warning the jury to consider her testimony with caution. But even if the district court erred in failing to give such an instruction, that error would not warrant reversal. The failure to give an accomplice credibility instruction requires reversal if the accomplice testimony "supplies the only strong evidence of guilt." *United States v. Moore*, 700 F.2d 535, 536 (9th Cir. 1983), *amended*, 730 F.2d 558

---

[**] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

(9th Cir. 1984). In this case, there was plenty of strong evidence proving that the Johnsons were guilty of health care fraud. For example, state and federal agencies sent complaints and audit results to the clinic, refuting the defense that the Johnsons were unaware that upcoding was occurring. Moreover, Barbara Phillips testified that she told Ms. Johnson that certain insurance claim forms indicated a higher level of service than had been performed. When Phillips refused to sign the forms, Ms. Johnson replied that she would use a stamp with Dr. Johnson's signature instead. And the ample evidence that upcoding occurred in the clinic for years was by itself enough for the jury to infer that those responsible for managing the clinic, and who stood the most to profit from overcharging for claims, were behind the practice.

The Johnsons also challenge their orders of forfeiture, arguing that a forfeiture order based on judicial factfinding violates the Sixth Amendment. In *Libretti v. United States*, the Supreme Court held that the Sixth Amendment does not require a jury determination on forfeitability. 516 U.S. 29, 49 (1995). In a recent case in which the defendant challenged an order of forfeiture based on judicial factfinding, we concluded that *Libretti* was still good law. *See United States v. Phillips*, 704 F.3d 754, 769–70 (9th Cir. 2012) ("Because *Libretti* has direct application in this case, we are bound by its holding even if it might appear

to rest on reasons rejected in some other line of decisions." (internal quotation marks omitted)), *cert. denied*, 133 S. Ct. 2796 (2013). The Johnsons urge us to reconsider in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in which the Court held that any fact increasing a mandatory minimum sentence must be submitted to a jury. Even if some of the reasoning underlying the two cases is in tension, however, *Alleyne* did not purport to overrule *Libretti*. Therefore, we remain bound by the specific holding in *Libretti* concerning forfeiture. *See Phillips*, 704 F.3d at 769–70. Accordingly, the Johnsons' challenge to their orders of forfeiture fails.

The district court imposed a supervised release condition on each of the Johnsons requiring that they "not frequent places where controlled substances are illegally sold, used, distributed, or administered," which the Johnsons challenge as impermissibly vague. Because neither defendant raised this issue before the district court, we review it on appeal for plain error. *United States v. Vega*, 545 F.3d 743, 747 (9th Cir. 2008). In *Phillips*, defendant argued that the same condition of supervised release was vague for the same reasons set forth by the Johnsons. 704 F.3d at 767–68. There, we concluded that the district court did not plainly err in imposing the condition, holding that a reasonable person would construe the condition as only prohibiting knowingly going to a specific place where drugs are

4

used or sold, and as not forbidding incidental contact with such places. *Id*. at 768.

For the same reasons, we hold that the district court did not plainly err in imposing

the supervised release condition here.

## II.    LaWanda Johnson's Sentencing

LaWanda Johnson also challenges two of the enhancements applied to her

sentencing calculation. We review the district court's interpretation of the

Sentencing Guidelines de novo, application of the Guidelines to the facts for abuse

of discretion, and factual findings for clear error. *United States v. Armstead*, 552

F.3d 769, 776 (9th Cir. 2008). Generally, the standard for finding facts at

sentencing is a preponderance of the evidence. *United States v. Dare*, 425 F.3d

634, 642 (9th Cir. 2005).

Ms. Johnson argues for the first time on appeal that the enhancements must

be supported by clear and convincing evidence, so we review for plain error

whether it was proper to apply a preponderance of the evidence standard. *See*

*Armstead*, 552 F.3d at 776. We conclude that it was not error of any kind to apply a

preponderance of the evidence standard to either of the sentencing enhancements.

While a clear and convincing standard is proper when the sentencing factor "has an

extremely disproportionate effect on the sentence relative to the offense of

conviction," *Dare*, 425 F.3d at 642, the two-level enhancement based on the

number of victims is not such a factor. *See Armstead*, 552 F.3d at 777–78 ("[A] two-level enhancement is not an exceptional circumstance that could warrant a higher standard of proof." (internal quotation marks and alteration omitted)). The sixteen-level enhancement for loss amount had a much more significant impact on her sentence, but even an enhancement with a larger impact on the sentence is satisfied by a preponderance of the evidence when the enhancement is "based on criminal activity for which the defendant has already been convicted" rather than "uncharged or acquitted conduct." *Id.* at 777. Ms. Johnson was convicted of thirty-four counts of health care fraud all arising from the same scheme, which were grouped together for the purposes of calculating her sentence. Because the loss amount depended on the extent of the scheme rather than on conduct distinct from the crimes of conviction, the district court did not err in applying a preponderance of the evidence standard.

We further conclude that the district court did not clearly err in finding that the enhancements were supported by a preponderance of the evidence. The two-level enhancement for ten or more victims was supported by an analysis of clinic patient records demonstrating that dozens of insurance companies had suffered losses on account of the clinic's fraudulent billing. Though fewer than ten of these companies asked for restitution, a victim for the purposes of sentencing is "any

6

person who sustained any part of the actual loss" included in the loss calculation. *Armstead*, 552 F.3d at 780–81 (quoting U.S.S.G. § 2B1.1 cmt. n.1). Ms. Johnson cites no authority for the proposition that an entity must request restitution to be counted as a victim. And even though the government conceded that a few of the insurance companies on its list were not victims because they did not pay the bills, this concession does not make a finding of more than ten victims error, given that the original list contained several dozen companies.

Nor did the district court clearly err in finding a loss amount of over $1,000,000 in support of the sixteen-level enhancement. The government presented a loss estimate of $1,869,492, based on trial testimony and clinic billing records. Though this figure was an extrapolation from reasoned assumptions, rather than a precise calculation of the amount of loss, the district court did not err in relying upon it. The district court "need only make a reasonable estimate of the loss." *Armstead*, 552 F.3d at 778 (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)); *see also United States v. Scrivener*, 189 F.3d 944, 950 (9th Cir. 1999) (affirming an estimate that extrapolated total loss from a small sample of victims). While Ms. Johnson presented her own calculations resulting in a much smaller sum at sentencing, the government pointed out errors in her methodology to which she provides no response even on appeal. Ms. Johnson has not demonstrated why the district court

7

was not entitled to adopt the government's methodology over her own. *See* U.S.S.G. § 2B1.1 cmt. n.3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence.").

### III.    Antoine Johnson's Motion to Dismiss

Finally, Antoine Johnson challenges the district court's denial of his pretrial motion to dismiss the indictment, arguing that the district court failed to consider a pertinent piece of evidence—the waiver notification form—when ruling upon that motion. By Dr. Johnson's own admission, however, that evidence was never before the district court when it ruled upon the original motion to dismiss the indictment or Dr. Johnson's motion to reconsider that ruling. According to him, the waiver notification form was subsequently introduced into evidence at trial. But we cannot fault the district court for failing to consider evidence not before it at the time it ruled upon a motion, and we decline to consider it now. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers submitted to the district court *after* the ruling that is challenged on appeal should be stricken from the record on appeal.").

Even were we to consider the waiver notification form, it would not convince us that the district court erred in concluding that Dr. Johnson was not a drug abuse treatment program. A drug abuse treatment program is an individual or

8

entity that not only provides drug abuse treatment, but also "holds itself out as providing" treatment. *See* 42 C.F.R. § 2.11. The district court's conclusion was based on a finding that Dr. Johnson did not hold himself out as providing drug abuse treatment, which we review for clear error. *United States v. Hinojosa-Perez*, 206 F.3d 832, 835 (9th Cir. 2000). Even had the district court considered the evidence at issue, which according to Dr. Johnson shows that he consented to be listed on a registry of doctors certified to provide a particular type of drug abuse treatment, this evidence does not make the district court's finding "illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). Taken together, the evidence in the record supported a finding that he did not advertise or market himself as a drug abuse treatment program, instead only providing treatment to current patients that tested positive for drug use.

**AFFIRMED.**