**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 9, 2012

No. 11-60522

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

ADEEB NAJI AMER, also know as Ed,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Defendant Adeeb Amer pleaded guilty to one count of distribution of Pseudoephedrine, in violation of 21 U.S.C. § 841(c)(2). The conviction rendered Amer deportable. 8 U.S.C. § 1227. He was sentenced to 30 months imprisonment, to be followed by three years of supervised release. There was no direct appeal and the conviction became final on February 24, 2009. *Amer v. United States*, No. 06-CR-118, 2011 WL 2160553, at *1 (N.D. Miss. May 31, 2011).

On March 31, 2010, the Supreme Court held in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), that the Sixth Amendment imposes on attorneys representing noncitizen criminal defendants a constitutional duty to advise the defendants

No. 11-60522

about the potential removal consequences arising from a guilty plea. Relying on *Padilla*, Amer filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255, contending that his trial counsel rendered constitutionally ineffective assistance by failing to inform him that his guilty plea carried a risk of deportation. The district court granted Amer's motion, concluding that the holding announced in *Padilla* applied to Amer and that his § 2255 motion was timely under § 2255(f)(3), which permits defendants to file motions within one year of a Supreme Court decision "newly recogniz[ing]" a right "made retroactively applicable to cases on collateral review." *Amer*, 2011 WL 2160553, at *1-3. The government timely appealed. For the reasons that follow, we reverse the district court's ruling noting also that the issue presently is pending before the Supreme Court.

That issue is whether, under the retroactivity framework established in *Teague v. Lane*, 489 U.S. 288 (1989), *Padilla* announced a rule that applies retroactively to convictions that became final before *Padilla* was decided. In *Teague*, the Supreme Court held that new constitutional rules of criminal procedure generally are inapplicable to convictions that become final before the rule was announced. 489 U.S. at 299-316.[1] The issue of whether *Padilla*'s rule may serve as the basis for Amer's collateral challenge to his conviction that had already become final when *Padilla* was decided therefore turns on whether the rule announced in *Padilla* is "new" within the meaning of *Teague*. On this issue, three circuit courts have already opined and the Supreme Court has granted certiorari to address the matter. *See United States v. Chang Hong*, 671 F.3d 1147, 1155 (10th Cir. 2011); *Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir.

---

[1] Although a "new" rule may still be applied retroactively if it falls within one of the two narrow exceptions to the *Teague* doctrine for substantive rules and "watershed" procedural rules, *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990), neither party contends that either exception is applicable to this case.

2011), *cert. granted*, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11-820); *United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011). We look forward to likely resolution of this question by the Supreme Court, however, in the interim, we join the Seventh and Tenth Circuits in holding that *Padilla* announced a "new" rule within the meaning of *Teague*.

A rule is "new" under *Teague* unless it was so "*dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. The Court reiterated this strict "*dictated* by precedent" test in *Lambrix v. Singletary*, 520 U.S. 518 (1997), emphasizing again the test's stringency by clarifying that "*dictated* by precedent" means that "*no other* interpretation was reasonable." *Id.* at 538 (emphases in original); *see Beard v. Banks*, 542 U.S. 406, 413 (2004) (citation omitted); *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997). It is thus not sufficient that a rule "could be thought to [be] support[ed]" by prior precedent, *Beard*, 542 U.S. at 414, or even that a rule represents the "most reasonable" interpretation of prior precedent, *Lambrix*, 520 U.S. at 538. In determining whether a rule was "susceptible to debate among reasonable minds" in light of the Supreme Court's precedent, *O'Dell*, 521 U.S. at 160 (citation omitted), relevant considerations include: (1) whether the decision announcing the rule at issue purported to rely on "controlling precedent," *Lambrix*, 520 U.S. at 528; (2) whether there was a "difference of opinion on the part of . . . lower courts that had considered the question," *Butler v. McKellar*, 494 U.S. 407, 415 (1990); and (3) whether the Justices expressed an "array of views," *O'Dell*, 521 U.S. at 159.

Taking these considerations in reverse order, the novelty of the rule announced in *Padilla* is underscored by the "array of views" expressed by the Justices in that case. *O'Dell*, 521 U.S. at 159. Justice Scalia, joined by Justice Thomas, dissented in *Padilla* on the ground that the Sixth Amendment "guarantees the accused a lawyer 'for his defense' against a 'criminal

prosecutio[n]'—not for sound advice about the collateral consequences of conviction." 130 S. Ct. at 1494 (Scalia, J., dissenting) (alteration in original) (quoting U.S. Const. Amend. VI). In the dissenting Justices' view, the Court's holding represented a break from the Court's precedents: "We have until today at least retained the Sixth Amendment's textual limitation to criminal prosecutions." *Id.* at 1495. Similarly, Justice Alito and the Chief Justice, concurring in the judgment, observed that the "Court ha[d] never held that a criminal defense attorney's Sixth Amendment duties extend to providing advice" about collateral consequences of conviction. *Id.* at 1488 (Alito, J., concurring). The concurring Justices, like the dissenters, viewed the Court's decision as a "dramatic departure from precedent" and a "major upheaval in Sixth Amendment law." *Id.* at 1488-91.[2]

Second, *Padilla* departed markedly from the "legal landscape" extant when Amer's conviction became final in February 2009. *Beard*, 542 U.S. at 413. Every federal court of appeals to decide the issue—nine in all—and numerous state appellate courts had held that the Sixth Amendment did not impose any duty to advise noncitizen defendants of the immigration consequences of pleading guilty. *See Padilla*, 130 S. Ct. at 1481 n.9 (listing cases). Our court, in particular, had held so. *Santos-Sanchez v. United States*, 548 F.3d 327, 336-37 (5th Cir. 2008); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993). We and other courts reasoned that the Sixth Amendment did not require advice about collateral consequences because such consequences are not imposed within the criminal proceeding and the Supreme Court had observed in *Brady v. United States*, 397 U.S. 742, 755 (1970), "that the accused must be 'fully aware of the *direct*

---

[2] Amer argues that in dismissing as unlikely the argument that its holding would open the floodgates of litigation over guilty pleas, the majority in *Padilla* "strongly suggest[s]" a belief that the decision would apply retroactively. We decline to perceive a dictate from an inference.

consequences' of a guilty plea." *Banda*, 1 F.3d at 356. Because *Padilla* abrogated the near-universal position of the lower state and federal courts, it cannot be said that *Padilla*'s holding would have been "apparent to all reasonable jurists" at the time that Amer's conviction became final. *See Beard*, 542 U.S. at 413; *O'Dell*, 521 U.S. at 166 n.3; *Lambrix*, 520 U.S. at 538.

Finally, albeit susceptible to more debate, two old lines of precedent, one more decisive than the other, came together at *Padilla*'s new "intersection of modern criminal prosecutions and immigration law." 130 S. Ct. at 1482. Specifically, the Court in *Padilla* had to address whether its *Strickland* "scope of representation required by the Sixth Amendment" extends to an affirmative duty to advise noncitizen defendants about the immigration consequences of pleading guilty so that "*Strickland* applies to Padilla's claim." 130 S. Ct. at 1481-82 (quoting *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008)). In answering the question in the affirmative, the Court acknowledged that it was "recognizing [a] new ground[] for attacking the validity of guilty pleas." *Id.* at 1485. Thus, although the Court observed that it was applying its *Strickland* test, the Court stated that this application of *Strickland* to guilty plea advice about the risk of future deportation was a holding that "follows" from *Hill v. Lockhart*, 474 U.S. 52, 58 (1984), which held that defendants are entitled to effective assistance of counsel in considering whether to plead guilty. *Padilla*, 130 S. Ct. at 1485 n.12. Notably, the Court at the same time acknowledged that *Hill* did "not control" the decision, inasmuch as "the *Hill* Court did not resolve the particular question respecting misadvice that was before it." *Id.*; *see also Lambrix*, 520 U.S. at 528-29 & n.3 (decision announced a new rule where it relied on supporting authority, rather than a precedent that "'controls' or 'dictates' the result"; put otherwise, asking whether "'controlling authority' . . . compel[s] the outcome").

No. 11-60522

For these reasons, we hold that the rule announced in *Padilla* is "new" within the meaning of *Teague*, and accordingly, it does not apply retroactively and may not serve as the basis for Amer's collateral challenge to his conviction that had already become final when *Padilla* was decided.  Therefore, we REVERSE the district court's order granting Amer's motion to vacate his sentence and REMAND for further proceedings, not inconsistent with this opinion.