**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 26, 2012

No. 11-40256

Lyle W. Cayce
Clerk

NOELIA TANGUMA MARROQUIN,

Plaintiff-Appellant

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:10-CV-156

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Noelia Tanguma-Marroquin petitioned the district court for writ of coram nobis, alleging ineffective assistance of counsel and seeking to vacate her criminal conviction for one count of transporting an undocumented alien for financial gain. The district court denied the petition, finding that Appellant had failed to demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40256

**I**

Appellant pled guilty by written plea agreement to one count of transporting an illegal alien within the United States for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). The district court sentenced Appellant to serve ten months in the United States Bureau of Prisons, with no term of supervised release. Appellant did not appeal the judgment or move to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Upon her release, United States Immigration and Customs Enforcement ("ICE") immediately took custody of Appellant, pursuant to an outstanding immigration detainer. While in ICE custody, Appellant filed a petition for writ of coram nobis.[1] Appellant alleged (1) that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), applied retroactively to her petition, and her counsel therefore had a constitutional obligation to inform her regarding potential deportation consequences of a guilty plea; and (2) that her counsel failed to so inform her, constituting prejudice under *Strickland.*

The district court agreed with Appellant that *Padilla* applied retroactively to her case, but concluded that she had not met her burden under *Strickland.* First, the district court concluded that Appellant's counsel demonstrated at sentencing that he was aware of the immigration consequences of her guilty plea, consistent with a presumption "that counsel satisfied [his] obligation to render competent advice at the time [his] client[ ] considered pleading guilty." *Padilla*, 130 S. Ct. at 1485 (citing *Strickland*, 446 U.S. at 689). Second, the district court concluded that, even if counsel failed to inform her of potential

---

[1] "In 1954, the Supreme Court's decision in *United States v. Morgan*, 346 U.S. 502 (1954), revived the ancient writ of coram nobis by holding that the writ was available in federal courts pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Since that time the writ has been used as an avenue of collateral attack when the petitioner has completed his sentence and is no longer 'in custody' for purposes of seeking relief under either 28 U.S.C. § 2241 or § 2255." *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998).

No. 11-40256

deportation, Appellant did not suffer prejudice because the sentencing court advised her of the risk of deportation at rearraignment.

On appeal, Appellant (1) contends that the district court should have granted coram nobis relief without requiring her to meet *Strickland's* two prong test; (2) reasserts her argument that *Padilla* applies retroactively to her petition; (3) argues that the district court did not automatically cure any prejudice by its advisals regarding deportation; and (4) requests that this court remand to the district court to for an evidentiary hearing.

In reviewing a district court's denial of a petition for writ of coram nobis, this court reviews factual findings for clear error, questions of law de novo, and the ultimate decision to deny the writ for abuse of discretion. *Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008)

## II

Appellant first contends that the district court should not have required her to meet *Strickland's* two prong test because her counsel failed to subject the prosecution's case to any meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (holding that counsel's failure to subject prosecution's case to adversarial testing amounts to constructive denial of counsel, and a reviewing court should not require petitioner to show prejudice); *Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998) (holding that "the constructive-denial claim is a very narrow exception to the *Strickland* prejudice requirement"). However, Appellant only urged the district court to apply *Strickland*, and she makes the "constructive denial" argument for the first time on appeal. We therefore decline to address it. *See Flores-Garza v. I.N.S.*, 328 F.3d 797, 804 n.7 (5th Cir. 2003) ("It is well established that this court ordinarily does not consider issues raised by the appellant for the first time on appeal.").

No. 11-40256

Appellant also reasserts that *Padilla* applies retroactively. However, this argument has been squarely foreclosed by a published decision of this court in the time since this appeal was filed. In *United States v. Amer*, --- F.3d ----, 2012 WL 1621005, \*3 (5th Cir. May 9, 2012), this court held, as a matter of first impression, that "the rule announced in *Padilla* is 'new' . . . and accordingly, it does not apply retroactively . . . ."[2]

Appellant's remaining arguments (that the district court's advisals did not cure *Strickland* prejudice and that the district court should have conducted an evidentiary hearing to determine whether counsel advised her on deportation) also depend on *Padilla* and are therefore infirm.

## III

Appellant's aforementioned arguments do not demonstrate that the district court abused its discretion in denying her petition for writ of coram nobis. We AFFIRM.

---

[2] On this question, circuit courts are split, and a petition for certiorari is presently pending before the Supreme Court. *Compare United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011) (holding that *Padilla* applies retroactively), *with United States v. Hong*, --- F.3d ----, 2011 WL 3805763 (10th Cir. Aug. 30, 2011), *and Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011), *cert. granted*, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11-820).

No. 11-40256

DENNIS, Circuit Judge, specially concurring:

I concur in affirming the district court's denial of Noelia Tanguma-Marroquin's petition for coram nobis relief because that outcome is dictated by this court's recent holding that the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), "does not apply retroactively and may not serve as the basis for [a] collateral challenge to [a] conviction that had already become final when *Padilla* was decided." *United States v. Amer*, --- F.3d ----, 2012 WL 1621005, at *3 (5th Cir. May 9, 2012). We are bound to follow *Amer* unless and until the Supreme Court reaches a contrary conclusion. *See Chaidez v. United States*, 132 S. Ct. 2101 (2012) (granting certiorari on the retroactivity question).

I write separately to express my thoughts on the prejudice issue in the event we are required to address it in the future should this case return to us.

## I.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process. During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citations omitted) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010)); *Hill v. Lockhart*, 474 U.S. 52, 54 (1985)). The right to effective representation during the plea process requires defense counsel to take adequate steps to "'[p]reserv[e] [a noncitizen defendant's] right to remain in the United States'" and "'preserv[e] the possibility of' discretionary relief from deportation." *Padilla*, 130 S. Ct. at 1483 (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001)); *see also id.* at 1485 ("For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea."). The familiar two-pronged ineffective assistance analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to alleged violations of this right. *Padilla*, 130 S. Ct.

at 1482. *Strickland*'s prejudice prong "ask[s] whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 694).

The district court reasoned that a court can erase the prejudice resulting from a defense attorney's failure to competently advise a noncitizen defendant during the plea process merely by stating at the plea entry proceeding that a guilty plea felony conviction would result in deportation. I find this rationale deeply flawed. The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Padilla*, 130 S. Ct. at 1486 (citing *Hill*, 474 U.S. at 57; *Richardson*, 397 U.S. at 770-71)). Thus, whether a petitioner is entitled to relief on the claim that defense counsel failed to advise her that the offered plea would result in automatic deportation turns on whether prejudice resulted from counsel's performance during the plea negotiation process, *id.* at 1482, and cannot be measured by a judge's performance in accepting the defendant's guilty plea as voluntary, *see Frye*, 132 S. Ct. at 1406.

## II.

In a series of decisions culminating in *Padilla*, *Lafler* and *Frye*, the Supreme Court has made clear that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process[] . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407. "Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is '[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Rivas-Lopez*, --- F.3d ----, 2012 WL 1326676, at

No. 11-40256

*2 (5th Cir. Apr. 18, 2012) (alteration in original) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)).

Given the paramount importance of effective representation during the plea bargaining process, it is difficult to see how a violation of that right can be erased by a trial court's general and talismanic plea colloquy statement after that bargaining process is complete, and immediately prior to the court's acceptance of the guilty plea. If, as the Supreme Court held in *Frye*, the holding of a fair trial cannot "inoculate [counsel's] errors in the pretrial process" from collateral attack under *Strickland*, *see Frye*, 132 S. Ct. at 1407, neither can a trial judge's plea colloquy warnings. Nor can a colloquy that assures only the minimal voluntariness of a plea serve as a proxy for effective assistance during the plea bargaining process, a process which necessarily *precedes* the defendant's decision whether or not to accept a plea. Indeed, as the Court reiterated in *Frye*, it has "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel." *Id.* at 1406.

The Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of the trial court to ensure a minimally valid guilty plea. "[C]ounsel's function as assistant to the defendant [gives rise to] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions" after "mak[ing] reasonable investigations." *Strickland*, 466 U.S. at 688, 691. Counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 130 S. Ct. at 1484 (quoting *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)).[1] Thus, the *Padilla* court stressed that "[i]t is

---

[1] *See also* ABA Standards for Criminal Justice, Pleas of Guilty, Standard 14-3.2(b) (3d ed. 1999) ("To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel and the defendant in reaching a decision.

7

quintessentially the obligation of *counsel* to provide her client with available advice about an issue like deportation." *Id.* at 1484 (emphasis added).

Accordingly, the judicial plea colloquy is no remedy for counsel's deficient performance in fulfilling these obligations. The colloquy merely "assist[s] the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969).[2] Moreover, because a judge "cannot investigate the facts[] . . . or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional," a judge cannot "discharge the obligations of counsel for the accused." *Powell v. Alabama*, 287 U.S. 45, 61 (1932). Indeed, Rule 11 mandates that "the court must not participate in [plea] discussions." Fed. R. Crim. P. 11(c)(1).

These differences between the role of the court and the duties of effective counsel explain the essential distinction between the Fifth Amendment plea voluntariness analysis and the Sixth Amendment ineffective assistance analysis. *See Lafler*, 132 S. Ct. at 1390 ("An inquiry into whether the rejection of a plea is knowing and voluntary, . . . is not the correct means by which to address a claim of ineffective assistance of counsel."); *Libretti*, 516 U.S. at 50-51 ("Apart from the small class of rights that require specific advice from the court under Rule 11[,] it is the responsibility of defense counsel to inform a defendant of the

---

Defense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed."); *id.* Standard 14-3.2(f) ("To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea.").

[2] *See also United States v. Ruiz*, 536 U.S. 622, 630 (2002) ("[T]he Constitution[] . . . permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."); *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000) ("To be knowing and intelligent, . . . [t]he defendant need only understand the direct consequences of the plea; he need not be made aware every consequence . . . .").

No. 11-40256

advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. . . . '[A] failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea.'" (first alteration in original) (quoting *United States v. Broce*, 488 U.S. 563, 574 (1989)).  As the Supreme Court explained in *Frye*, although "plea entry proceedings [provide] the trial court and all counsel [with] the opportunity to establish on the record that the defendant understands . . . the advantages and disadvantages of accepting [a plea offer], . . . *Padilla* illustrate[s] . . . [that] claims of ineffective assistance can arise after the conviction is entered." *Frye*, 132 S. Ct. at 1406 (citations omitted).

Indeed, the conclusion that a trial court's deportation warnings do not foreclose a showing of prejudice is confirmed by the *Padilla* Court's own discussion of such warnings.  The Court specifically recognized that defendants in many jurisdictions receive generalized deportation warnings on plea forms or at plea colloquys, much as Tanguma-Marroquin did here. *Padilla*, 130 S. Ct. at 1486 n.15.  However, the Court never intimated that such warnings could prove fatal to ineffectiveness claims, despite the fact that Padilla himself had received such a warning on his Kentucky plea form.[3]  To the contrary, the Court cited such practices in support of its conclusion that "[t]he severity of deportation — 'the equivalent of banishment or exile' — only underscores how critical it is for *counsel* to inform her noncitizen client that he faces a risk of deportation." *Id.* at 1486 (emphasis added).

Furthermore, counsel's responsibilities in the plea bargain process extend beyond warning the client of the disadvantages of an offered plea. *See Frye*, 132

---

[3] *Cf., e.g.*, *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010) (concluding that petitioner's *Strickland* claim fails because, assuming counsel's representation was deficient, petitioner "cannot show prejudice"); *Smith v. Spisak*, 130 S. Ct. 676, 685-87 (2010) (same).

S. Ct. at 1407-08; *Padilla*, 130 S. Ct. at 1486.   The Supreme Court has repeatedly "recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Id.* at 1483 (alteration in original) (quoting *INS v. St. Cyr.*, 533 U.S. 289, 323 (2001)).   "The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties." *Frye*, 132 S. Ct. at 1407.   "Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." *Padilla*, 130 S. Ct. at 1486; *see Vartelas v. Holder*, 132 S. Ct. 1479, 1492 n.10 (2012) ("Armed with knowledge that a guilty plea would preclude travel abroad, alien[] [defendants] might endeavor to negotiate a plea to a nonexcludable offense . . . .").[4]   "In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations.  Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Frye*, 132 S. Ct. at 1407-08 (alteration in original) (internal quotation marks omitted).[5]  This is particularly

---

[4] *See also, e.g.*, *Hernandez-Cruz v. Holder*, 651 F.3d 1094 (9th Cir. 2011) (discussing a plea agreement in which "[t]he state secured convictions on the charges that are punished more harshly under state law without incurring the expense and hassle of a trial" and the defendant "agreed to plead guilty to a charge that, although more serious, had a smaller chance of causing adverse immigration consequences").

[5] *See also Frye*, 132 S. Ct. at 1412 (Scalia, J., dissenting) (explaining that "counsel's plea-bargaining skills[] . . . must . . . meet a constitutional minimum").

true when a plea renders a noncitizen statutorily ineligible for discretionary relief from deportation.[6]

These recognized, affirmative benefits of representation by competent counsel bear on the prejudice issue because, in order to establish prejudice resulting from ineffective assistance during the plea bargaining process, "a defendant must show the outcome of the plea process would have been different." *Lafler*, 132 S. Ct. at 1384. In many cases, this will not require a showing that the defendant "would have insisted on going to trial." *Frye*, 132 S. Ct. at 1409-10.[7] It follows that a defendant may establish prejudice by demonstrating a reasonable probability that counsel's failure to negotiate on the basis of an even "rudimentary understanding of the deportation consequences of a particular criminal offense" deprived the defendant of an opportunity to plead to "a conviction for an offense that [does not] automatically trigger[]" deportation. *See Padilla*, 130 S. Ct. at 1486.

Finally, and perhaps most importantly, by the time the plea colloquy occurs, the plea bargaining process is over — and with it, defense counsel's opportunity to negotiate and advise the client based on an adequate understanding of deportation consequences. Counsel is obligated to effectively investigate and advise her client regarding immigration consequences "*[b]efore* [the client] decid[es] whether to plead guilty," a decision made before the judicial plea colloquy occurs. *See Padilla*, 130 S. Ct. at 1480-81 (emphasis added); *id.* at

___

[6] *See* 8 U.S.C. § 1229b(a)(3) (providing that a lawful permanent resident "convicted of an aggravated felony" is ineligible for cancellation of removal); *see also Hodge v. U.S. Dep't of Justice*, 929 F.2d 153, 158 (5th Cir. 1991) (noting that "8 U.S.C. § 1362 . . . precludes the right to appointed counsel in deportation proceedings" (emphasis omitted)).

[7] "In cases [such as *Hill*] where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' . . . *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Frye*, 132 S. Ct. at 1409-10 (quoting *Hill*, 474 U.S. at 59).

1486 ("[I]nformed consideration of possible deportation can only benefit both the State and noncitizen defendants *during the plea-bargaining process*. By bringing deportation consequences *into this process*, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties." (emphasis added)).[8] That a defendant, who has already signed a plea agreement upon counsel's advice, is told by the trial judge that the plea will result in deportation simply does not bear on the relevant question of "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970), a noncitizen defendant cannot reasonably be expected to reassess the advantages and disadvantages of a plea that her attorney has advised her to take based on information regarding deportation disclosed for the first time at the plea colloquy. *See Padilla*, 130 S. Ct. at 1484 (stating that noncitizens are "a class of clients least able to represent themselves").

In sum, trial judges cannot, and should not attempt to, take over defense counsel's distinctive and critical obligation to give constitutionally adequate advice regarding the issue of deportation during the plea bargaining process. *See* Fed. R. Crim. P. 11(c)(1); *Libretti*, 516 U.S. at 50. If counsel fails in that "quintessential[] . . . duty," *Padilla*, 130 S. Ct. at 1484, and the defendant consequently accepts a plea that mandates deportation, the damage has been done by the time the defendant appears before the court to formally enter the plea. It seems to me obvious that no last minute, one-size-fits-all judicial

---

[8] *Cf. United States v. Orocio*, 645 F.3d 630, 646 (3d Cir. 2011) (explaining that a trial court advisal at sentencing did not "mitigate any prejudice" because it occurred "too late in the process . . . to effectively alert [the defendant] to the severe removal consequences of his guilty plea").

No. 11-40256

warning can adequately serve as a surrogate for effective counsel during the plea bargaining process. It is simply too little too late.

## III.

"[T]he impact of a general court-advisal on the prejudice inquiry" is one of the "major issues [to] have emerged consistently in state . . . and federal . . . courts" since *Padilla* was decided.[9]  The district court's approach to this important issue is contrary to the Supreme Court's precedents applying *Strickland* in the plea bargaining context, and would pretermit "claims . . . with substantial merit" brought by "a class of clients least able to represent themselves," in abdication of the courts' "responsibility under the Constitution to ensure that no defendant — whether a citizen or not — is left to the mercies of incompetent counsel." *Padilla*, 130 S. Ct. at 1484, 1486.

---

[9] Lindsay C. Nash, Considering the Scope of Advisal Duties Under *Padilla*, 33 Cardozo L. Rev. 549, 552 & n.8 (2011) (citing *People v. Garcia*, 907 N.Y.S.2d 398, 407 (N.Y. Sup. Ct. 2010), and *Tanguma Marroquin v. United States*, Civ. No. M-10-156, 2011 WL 488985 (S.D. Tex. Feb. 4, 2011)).