STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-903


STATE OF LOUISIANA

VERSUS

MARIO SURUS


**********

APPLICATION FOR SUPERVISORY WRITS
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 126405
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

**********

**JIMMIE C. PETERS
JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Shannon J. Gremillion,
Judges.


**WRIT DENIED.**

Cooks, J., dissents and assigns written reasons.


**Michael Harson
District Attorney
Christine B. Roberts
Assistant District Attorney
Fifthteenth Judicial District
P. O. Box 3306
Lafayette, LA 70502
(337) 232-5170
COUNSEL FOR APPELLEE:
     State of Louisiana**

**Albert M. Karre´, Jr.**
**Karre´ Law Office**
**208 West Main Street**
**Lafayette,  LA 70501**
**(337) 235-5704**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Mario Surus**

**PETERS, J.**

The defendant, Mario Surus, filed an application for post-conviction relief in the trial court seeking to have his conviction for a violation of La.R.S. 40:971(B)(1)(b) set aside. The trial court rejected that application, and the defendant filed an application for supervisory relief in this court. For the following reasons, we deny the application and affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The underlying facts in this supervisory writ application are not in dispute. The defendant is a citizen of the nation of Israel and a lawful, permanent resident of the United States. On November 4, 2009, the State of Louisiana (state) charged him by bill of information with attempting to obtain possession of hydrocodone by misrepresentation, fraud, forgery, deception, or subterfuge, a violation of La.R.S. 40:971(B)(1)(b). On March 25, 2010, the defendant changed his former not-guilty plea to guilty as charged.

Immediately before entering his guilty plea, the defendant completed a Guilty Plea Form acknowledging his understanding of the rights he was waiving by not proceeding to trial, the maximum and minimum sentences he was facing by pleading guilty, and a proposed plea recommendation by the state in the event he chose to plead guilty. Additionally, the state provided him with a written form containing the conditions of probation applicable in the event the trial court accepted his guilty plea and placed him on probation.

At the plea hearing, the trial court questioned the defendant to determine the free and voluntarily nature of the plea and advised him of the rights he was waiving by pleading guilty. After the state provided the trial court with a factual

basis for the plea,[1] the trial court accepted the defendant's plea and sentenced him, pursuant to the terms of the state's plea recommendation, to serve two years at hard labor, suspended the sentence, and placed him on supervised probation for a period of eighteen months.

On September 26, 2011, the defendant completed his sentence and received his first-offender pardon as provided for in La.R.S. 15:572. Shortly thereafter, upon returning from Israel, the defendant was temporarily detained by airport authorities because of his felony conviction. He claims that nothing came of this detention, but on May 12, 2012, he received a letter from what he described as the "Immigration Court" informing him that the conviction mandated an "automatic" deportation.[2] Thereafter, on July 9, 2012, he received a summons from the immigration court ordering him to appear for a hearing on December 13, 2012.[3] Apparently the December 13, 2012 hearing was continued because, according to the defendant, at the time of the June 7, 2013 hearing giving rise to this supervisory writ application, the immigration proceeding was "ongoing."

On April 4, 2013, the defendant filed an application for post-conviction relief with the trial court asserting that his Sixth Amendment rights had been violated because his attorney failed to advise him of the consequences his guilty

---

[1] The state informed the trial court that "on July 6, 2009, Mario Surus attempted to possess a controlled dangerous substance by fraudulent means and that occurred in Lafayette Parish, Louisiana." The trial court then questioned the defendant, who admitted that the factual situation provided by the state was accurate, admitted that he committed the offense, and asserted that it was his idea to plead guilty to the offense.

[2] The only evidence of the "automatic deportation" aspect of this case is the defendant's testimony as he did not produce this letter at the hearing and, therefore, it did not become a part of the evidentiary record.

[3] The defendant did offer and file this notice in the record at the time of the hearing giving rise to this supervisory writ application. However, the notice makes no reference to any "automatic deportation" requirement based on the defendant's conviction. It merely informs the defendant of the date of the hearing, his right to an appointed attorney or the attorney of his choice, and the possible consequences of his failure to appear.

2

plea might have on his immigration status. This failure, he argued to the trial court, caused his guilty plea to be involuntary.

The trial court held a hearing on this issue on June 17, 2013, with only the defendant presenting testimony. At the hearing, the defendant testified that after his December 15, 2009 arraignment, he was appointed counsel through the Lafayette Parish Indigent Defender's Office, and, although he attempted to contact his counsel five or six times, the first time they met was March 25, 2010, the day he entered his plea. After speaking with his appointed counsel for a few minutes, he agreed to plead guilty in exchange for an eighteen-month probation sentence. He testified that his counsel did not question him concerning his citizenship status.[4] The defendant asserts that his appointed counsel's failure to advise him that his legal status in the United States might be in jeopardy if he chose to plead guilty, i.e., automatic deportation, constitutes ineffective assistance of counsel. He stated that had he known of the possibility of deportation, he would have asked his attorney to negotiate a better deal and, if that were not possible, he would not have entered the plea.

Although the defendant testified extensively at the June 17, 2013 hearing concerning the inadequacy of his discussions with his trial attorney, he failed to express any such concerns at the March 25, 2010 hearing when he entered his plea. In fact, he admitted at the June 17, 2013 hearing that when he entered his plea, the trial court asked him at least three separate times whether he had adequate time to speak with his attorney concerning his case before entering his plea and that he had responded, "[y]es sir" all three times. Additionally, he admitted that he was in fact guilty of the possession charge.

---

[4] There is no evidence to suggest that the defendant ever advised his trial counsel that he was a citizen of another country during their pre-plea discussions.

When questioned by the trial court concerning what he could expect from a judgment setting aside his conviction given the fact that he was guilty of the offense charged, the defendant said that he hoped to get a new attorney with immigration law experience, who could negotiate a better deal. The following exchange took place between the trial court and the defendant:

> TRIAL COURT: Sir, is there some particular evidence that you are aware of that you wanted to communicate to your lawyer so that that lawyer could present in court at your trial that would've resulted in a not guilty verdict?
>
> DEFENDANT: Yes, sir.
>
> TRIAL COURT: Share with me what that is.
>
> DEFENDANT: I don't have them right now, but I'm going to tell you like this. I was not pleading guilty if I know it was going to cost me automatic deportation. All I'm saying is that I want, you know what I'm saying, presentation from a public defender, and he was supposed to tell me, like, about deportation or, you know, something else instead, you know what I'm saying, and go further with the case or go further with the case. I would hire a better lawyer. I would hire immigration lawyer. I would do something, you know what I'm saying, to, you know, talk to the public defender, the judge, to try to get something to not get deportation, you know.
>
> TRIAL COURT: Correct. And the thing to not get deported would be not guilty.
>
> DEFENDANT: I was not – I would plead not guilty and try to fight the case, you know. But at the time I was sitting down, we were in the back for five minutes, he told me "you're going to plead guilty, you're going to get only 18 months probation, you're not going to get jail time," so the only thing I need to say, okay. I was just trying to get out the court, you know. It was not in my knowledge that I'm going to get deported and it's going to cost me, you know what I'm saying, like, problems in the future. I understand where you're coming from, but I was not having knowledge of all that, you know.
>
> TRIAL COURT: Right. As you sit here now, though, assuming you are successful today and I remove your guilty plea and reinstate the not guilty plea, what makes you think there will be a different outcome?
>
> > COUNSEL FOR THE DEFENDANT: Different attorney, different attorney.

4

DEFENDANT: Maybe different attorney. Like I said in the beginning, like, if I had the knowledge, maybe get a better attorney, maybe find some different evidence in the case or something.

TRIAL COURT: Attorneys don't manufacture evidence.

DEFENDANT: Yeah, I know.

. . . .

TRIAL COURT: . . . What information do you have now that you think would convince someone that you did not commit this crime?

DEFENDANT: I don't have no evidence to convince nobody.

TRIAL COURT: You do not have any evidence that would convince anybody that you are not the person who committed this crime?

DEFENDANT: I'm the person who committed this crime, but I was kind of twisting, like, something that happened without my knowledge, okay, and I pled guilty because it was my stupid fault, you know, so I just pled guilty, you know.

TRIAL COURT: Now I'm very confused. You are telling me you are the person who committed the crime but you didn't know that you were committing the crime when you committed it?

DEFENDANT: Yes sir.

The defendant then testified that when he broke an ankle, his treating physician gave him a prescription for hydrocodone. When he could no longer refill that prescription, he asked a family member for help because he did not have insurance. The family member told the defendant that he knew a doctor who would give him a prescription and, soon thereafter, produced a prescription from the doctor. The defendant never spoke to the family member's doctor, and the doctor never examined the defendant. When he produced the prescription at the pharmacy, the defendant was taken into custody.

The state called no witnesses at the June 17, 2013 hearing and acknowledged in argument to the trial court that based on *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010), the defendant's trial counsel was ineffective in that he did not

5

advise the defendant of the consequences of the guilty plea with regards to his immigration status.

After hearing the arguments of counsel, the trial court rejected the defendant's post-conviction relief application. In doing so, the trial court concluded that the defendant's trial counsel provided ineffective assistance of counsel during the pretrial stage of the proceedings, but further concluded that the ineffective assistance of counsel did not prejudice the defendant and did not alter what would otherwise have been the ultimate outcome of the proceedings. Specifically, the trial court noted that the defendant's only argument was his hope of negotiating a better deal with the prosecutor and that he offered no evidence to show that the state would have further negotiated the charge. With regard to the lack of evidence on this point, the trial court noted:

> So that evidence – there was no reason to excuse that lack of presentation of evidence. And so, therefore, there is no reason for me to conclude – I asked several times what outcome could have been different – there was no reason for me to conclude that even if this offender, Mr. Surus, had been represented by the most able criminal defense attorney, the most able immigration attorney, that that attorney would have been able to achieve the result that this – that Mr. Surus asserts he desires.

The defendant then filed this application for supervisory writs.

## OPINION

The elements of an ineffective assistance of counsel analysis are well settled:

> The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

*State v. Griffin*, 02-1703, p. 9 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515.

With regard to this ineffective assistance of counsel issue, the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 368, 130 S.Ct. 1473, 1483 (2010), stated:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(A)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country.

While finding that Padilla's trial counsel had an obligation to inform him of the consequences of his guilty plea as it related to his immigration status, the Supreme Court did not address the second prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Instead, it remanded the matter to the lower court for the determination of the prejudice issue.

We do not have to reach the question of whether the trial court erred in finding that the second prong of *Strickland* was not met by the defendant, because we find that the defendant did not timely file his application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8(A)(1) provides that:

(A) No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:

(1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.

It is not disputed that more than two years had lapsed after the defendant's conviction and sentence became final before he filed his motion for post-conviction relief. He claims the La.Code Crim.P. art. 930.8(A)(1) exception based on his assertion that he was not aware of the automatic deportation penalty until May of 2012. However, in response to a question by the state at the June 17, 2013 hearing, the defendant suggested that he was aware of the connection between his criminal record and his immigration status, but that he was not aware of the *automatic* deportation elements. The defendant made it clear to the trial court that had he known the penalty was automatic deportation, he "might" have tried to obtain a different lawyer, "maybe an immigration lawyer to maybe push the court a little bit." In other words, the defendant was well aware that his immigration status could be affected by his criminal record at the time he pled guilty, but that he "didn't know it was going to cost [him] that much problems."

The defendant's complaint involves dissatisfaction with what may be the *result* of his immigration problems and not his lack of knowledge of the relationship between his immigration status and his criminal record at the time of his plea. Thus, he does not fit within the exception provided by La.Code Crim.P. art. 930.8(A)(1), and his application for post-conviction relief is untimely.

Additionally, the defendant was no longer in custody when he filed his application for post-conviction relief. In fact, he had received his first-offender pardon as provided for in La.R.S. 15:572, approximately one and one-half years

8

before filling his application. Louisiana Code of Criminal Procedure Article 924(1) provides that "[a]n 'application for post conviction relief' means a petition *filed by a person in custody* after sentence following conviction for the commission of an offense seeking to have the conviction and sentence set aside." (Emphasis added.) Furthermore, La.Code Crim.P. art. 924(2) defines custody as "detention or confinement, or probation or parole supervision, after sentence following conviction for the commission of an offense." Simply stated, a defendant cannot bring an application for post-conviction relief after the sentence is satisfied. *State v. Smith*, 96-1798 (La. 10/21/97), 700 So.2d 493.

### DISPOSITION

For the foregoing reasons, we find that the defendant is not entitled to post-conviction relief. We deny his application for supervisory writs.

**WRIT DENIED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


13-903


STATE OF LOUISIANA

VERSUS

MARIO SURUS

**COOKS, J., dissenting.**

The majority disposes of Defendant's writ application by finding it wan not timely filed. The timeliness of the present application for post-conviction relief was discussed at the evidentiary hearing. It was not disputed that the application for post-conviction relief was filed more than two years after Defendant's conviction and sentence became final. However, the trial court found the application was timely filed pursuant to La.Code Crim.P. art. 930(8)(A)(1), which provides an exception to the two-year time limitation if "[t]he application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney." The trial court found the exception applicable in this case, and I find no error in that conclusion.

The majority finds the exception does not apply because "defendant's complaint involves dissatisfaction with what may be the *result* of his immigration problems and not his lack of knowledge of the relationship between his immigration status and his criminal record at the time of his plea." I cannot agree with this interpretation and find the record amply supports Defendant's contention that he was wholly unaware of the effect his guilty plea would have on his immigration status at the time of the plea. There was no error in the trial court's conclusion that the application for post-conviction relief is timely.

Defendant seeks to withdraw his guilty plea because he was never informed by his defense counsel or the State that the plea could result in any consequence to his immigration status. In this case, because of the conviction, he is now subject to automatic deportation. Defendant has a family he lives with in Louisiana.

When Defendant realized he was subject to automatic deportation as a result of his guilty plea, he immediately filed an application for post-conviction relief with the trial court. In it, he asserted that his Sixth Amendment rights had been violated because his attorney failed to advise him that pleading guilty plea would affect his immigration status in the United States. An evidentiary hearing was held.

At the evidentiary hearing, the State and trial court both agreed with Defendant that based on *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010), Defendant's court appointed counsel was ineffective by failing to advise him of the consequences the guilty plea would have on his immigration status. The facts of *Padilla* are similar to the facts in this case in that the conviction was for unlawful drugs and involved the defendant's acceptance of a guilty plea which subjected him to automatic deportation.[1] Despite its finding that defense counsel was ineffective, the trial court still rejected Defendant's post-conviction relief application, finding Defendant failed to meet the second prong of the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) -- that he was prejudiced by the ineffective assistance of counsel.

At the evidentiary hearing, Defendant testified that, despite numerous prior attempts to meet with his court appointed attorney, *he only met with him once, just for five minutes prior to the guilty plea hearing*. He acknowledged the reason he accepted the plea was that it involved no jail time. But he reiterated had he known

---

[1] It should be noted the United States Supreme Court did not address the issue of whether the defendant was prejudiced by the defective performance of his counsel. The supreme court remanded to the lower court for a determination of the prejudice issue.

he was subject to deportation because of the guilty plea he would have "tr[ied] to get more time from the court and tr[ied] to get me a better lawyer. . . Try to go harder with the case."

*Padilla* held that a criminal defense attorney is obligated to affirmatively and accurately advise a non-citizen client about the deportation consequences of a plea "when the deportation consequences are truly clear." *Id*. at 1483. There seems little doubt in this case that the deportation consequences facing Defendant in this case were "truly clear," and should have been communicated to Defendant.

Of particular interest is *Marroquin v. United States*, 480 Fed.Appx. 294 (5th Cir. 2012). In that case, the defendant pled guilty to one count of transporting an illegal alien within the United States for financial gain in violation of federal law. Upon her release, the United States Immigration and Custom's Enforcement took custody of the defendant for purposes of deportation. The defendant filed a writ alleging *Padilla* applied retroactively to her petition and her counsel therefore had a constitutional obligation to inform her regarding the potential deportation consequences of a guilty plea, and that her counsel failed to do so, constituting prejudice under *Strickland*. The district court agreed that *Padilla* applied retroactively to her case, but concluded she had not met her burden under *Strickland*. The United States Fifth Circuit Court of Appeal affirmed on the grounds that *Padilla* does not apply retroactively. The majority opinion did not address whether the defendant met her burden to show prejudice under *Strickland*. Judge Dennis authored a concurring opinion, agreeing with the majority's finding that *Padilla* does not apply retroactively, but expressing his opinion on the prejudice issue. In part, Judge Dennis wrote:

> "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process. During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citations omitted) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))

(citing *Missouri v. Frye*, 132 S.Ct. 1399 (2012); *Padilla v. Kentucky*, 130 S.Ct. 1473, 1486 (2010)); *Hill v. Lockhart*, 474 U.S. 52, 54 (1985)). The right to effective representation during the plea process requires defense counsel to take adequate steps to "'[p]reserv[e] [a noncitizen defendant's] right to remain in the United States'" and "'preserv[e] the possibility of' discretionary relief from deportation." *Padilla*, 130 S.Ct. at 1483 (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001)); *see also id.* at 1485 ("For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea."). The familiar two-pronged ineffective assistance analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to alleged violations of this right. *Padilla*, 130 S.Ct. at 1482. *Strickland*'s prejudice prong "ask[s] whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 694).

. . .

In a series of decisions culminating in *Padilla*, *Lafler* and *Frye*, the Supreme Court has made clear that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process[] . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407. "Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is '[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Rivas-Lopez*, --- F.3d ----, 2012 WL 1326676, at *2 (5th Cir. Apr. 18, 2012) (alteration in original) (quoting *United States v.Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)).

*Marroquin*, 480 Fed.Appx. at 287-98.

There was no dispute that Defendant in this case received ineffective assistance of counsel during the plea negotiations. The trial court in this matter agreed that counsel's performance was deficient, but apparently believed Defendant's plea was still effective because it was voluntarily given. Judge Dennis in his concurrence noted that the violation of a defendant's right to effective representation by defense counsel during the plea bargaining process cannot "be erased by a trial court's general and talismanic plea colloquy statement after the bargaining process is complete." *Id.* at 298. He notes the United States Supreme Court in *Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012) held the holding of a fair

trial cannot "inoculate [a trial counsel's] errors in the pre-trial process" from collateral attack under *Strickland*. *Id.* at 298. Judge Dennis finds that a trial judge's plea colloquy warnings likewise cannot supercede errors made by defense counsel during the plea bargaining process. In detail on this issue, Judge Dennis explained:

> The Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of the trial court to ensure a minimally valid guilty plea. "[C]ounsel's function as assistant to the defendant [gives rise to] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions" after "mak[ing] reasonable investigations." *Strickland*, 466 U.S. at 688, 691. Counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 130 S. Ct. at 1484 (quoting *Libretti v. United States*, 516 U.S. 29, 50-51 (1995)). Thus, the *Padilla* court stressed that "[i]t is quintessentially the obligation of *counsel* to provide her client with available advice about an issue like deportation." *Id.* at 1484 (emphasis added).
>
> Accordingly, the judicial plea colloquy is no remedy for counsel's deficient performance in fulfilling these obligations. The colloquy merely "assist[s] the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969). Moreover, because a judge "cannot investigate the facts[] . . . or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional," a judge cannot "discharge the obligations of counsel for the accused." *Powell v. Alabama*, 287 U.S. 45, 61 (1932). Indeed, Rule 11 mandates that "the court must not participate in [plea] discussions." Fed. R. Crim. P. 11(c)(1).

*Id*. at 298-99.

Judge Dennis further notes the conclusion that a trial court's deportation warnings do not foreclose a showing of prejudice is confirmed by the *Padilla* Court's own discussion of such warnings." *Id*. at 299. *Padilla* specifically noted "the severity of deportation – 'the equivalent of banishment or exile' – only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Padilla*, at 1486.

As set forth earlier there is nothing in the record to dispute that Defendant was never informed that he faced automatic deportation, or that the trial court informed him of this at the plea colloquy hearing. Defendant testified he would never have accepted the plea were he aware of the automatic deportation that it entailed.

The trial court in the present case focusing on the prejudice issue rests its finding solely on whether Defendant would be able to prove he was innocent of the charges at trial. However, this was not the appropriate inquiry. Whether or not Defendant could establish his innocence (and he candidly admitted he likely could not) is not dispositive of the deportation issue. Defendant in brief points out that "[w]here drug offenses are concerned, federal immigration law specifically allows discretionary relief for crimes that do not require mandatory deportation." Defendant maintains he could have had the opportunity to negotiate a plea for lesser and included offense, one which would not have resulted in automatic deportation. Defendant also maintains because he had no prior criminal history he may have been a candidate for pre-trial diversion as well. Judge Dennis noted the United States Supreme Court has repeatedly "recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Marroquin*, 480 Fed.Appx. at 300, (quoting *Padilla*, 130 S.Ct. at 1483 (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001)). This would seem particularly so in the instant case as Defendant has a family here in Louisiana.

In the present case, when Defendant was not advised of the consequences of his felony plea to attempted possession of a controlled dangerous substance, he was deprived of an opportunity to seek discretionary relief from automatic deportation. Defendant unequivocally maintained throughout these proceedings he would not have pled guilty had he known of the mandatory deportation

consequences. He maintained he would have either sought a different plea bargain, sought the services of an immigration attorney, or proceeded to trial. Thus, I find Defendant met his burden of proving prejudice under *Strickland*. For these reasons, I respectfully dissent from the majority's opinion and would grant Defendant's writ.