STATE OF LOUISIANA

VERSUS

JASON DUFRENE

NO. 20-KP-290

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-6894, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING


December 09, 2020


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and John J. Molaison, Jr.


**WRIT DENIED; CONVICTION AND SENTENCE AFFIRMED.**
   **JJM**
   **FHW**
   **MEJ**

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE
    Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
JASON DUFRENE
    Jason Dufrene
    Mario A. Sanchez

**MOLAISON, J.**

Defendant Jason Dufrene, seeks supervisory review of his misdemeanor conviction for domestic abuse battery. He requests that this Court reverse the trial court's March 3, 2020 judgment and render a verdict of not guilty. After a review of this matter, we deny this writ application.

**Procedural History**

The defendant was charged with domestic abuse battery in violation of 14:35.3 on February 5, 2019.[1] The defendant was found guilty as charged after a bench trial held on February 20, 2020 and March 3, 2020. On March 16, 2020, the trial court sentenced the defendant to six months in the Jefferson Parish Correctional Center, suspended all but 48 hours of that sentence, and placed the defendant on active probation for a term of six months. The defendant was placed under an order of protection to have no contact with the victim. He was also required to complete 64 hours of community service and a Domestic Abuse Intervention Program with the Intensive Probation Service Department. During his sentence, he is not to possess a firearm. On that same date, the trial court granted his trial counsel's motion to withdraw as counsel.

Defendant filed a timely Notice of Intent to Seek Supervisory Writ Approval on March 26, 2020. After several extensions of time by the trial court, Defendant filed a *pro se* writ application seeking review of his conviction on the return date of August 31, 2020. On October 20, 2020, Defendant amended his application with the transcripts of the hearing after the request of this Court.[2]

**Facts**

At trial, the State presented the following evidence to prove that on October

---

[1] The bill of information was amended on February 20, 2020 to reflect the victim as Haley Bealer.
[2] Defense counsel filed a Motion to Enroll as Counsel of Record & Motion to Extend Supplementle [sic] Filing Return Date on October 19, 2020 requesting an extension of seven days from this Court's October 13, 2020 deadline to supplement the record. It was granted by this court. Counsel of record did not submit any further pleadings.

28, 2018, the defendant committed domestic abuse battery of Ms. Haley Bealer, his former cohabitant and the mother of his child, in a Walmart parking lot in Jefferson Parish. On February 20, 2020, the State introduced the computer-aided dispatch and the 9-1-1 recording.[3] Deputy Ryan Singleton of the Jefferson Parish Sheriff's Office ("JPSO") was the State's first witness. He testified that while working an off-duty assignment at the Walmart Super Center at 1501 Manhattan Boulevard in Harvey, Louisiana, he responded to a priority call for a domestic disturbance involving a gun or firearm. In the parking lot, Deputy Singleton met with and took statements from Ms. Bealer; her boyfriend, Spencer Van Norman; and her cousin who was a rear passenger in her vehicle.[4] After the witnesses stated that the defendant, a Gretna police officer, had pushed Ms. Bealer and removed his gun from his holster to threaten Mr. Van Norman, Deputy Singleton contacted the JPSO Second District to update the status of the call. Deputy Singleton retrieved and reviewed Walmart's surveillance video of the parking lot, on which he was able to identify the defendant's and victim's vehicles.[5] Deputy Singleton testified that he did not check other businesses to see if they had any other surveillance cameras.

Sergeant Lee Hardy from the JPSO Second District testified that he participated in the investigation in a supervisory capacity. He contacted a supervisor at the Gretna Police Department to notify them of the defendant's involvement in the situation. Sergeant Hardy went to the defendant's house, where the defendant's captain was present, and advised him of his *Miranda* rights. Defendant related to him that he had been in a verbal altercation with Ms. Bealer,

---

[3] These exhibits were not attached to the transcript and are not reviewable by this Court; none of the exhibits offered into evidence during the trial by defendant or the State were attached. However, on the second day of the trial, the 911 caller, Tony Francisco, testified.

[4] This passenger was later identified as Taylor Chauvin, but he was not called as a witness to testify at trial by either defendant or the State.

[5] The video was introduced into evidence but not attached to this transcript; however, Deputy Singleton did testify that the position of the camera prevented the viewing of any of the parties.

but denied putting his hands on or threatening anybody. Defendant stated he had his weapon on him, but at no time did he pull it out.[6]

Spencer Van Norman testified as a State witness and identified the defendant in the courtroom. At the time of trial, Mr. Van Norman had been married to Ms. Bealer for six months. He testified that on October 28, 2018, he met the defendant for the first time at the baptism of the defendant and Ms. Bealer's daughter earlier that day. Later, Mr. Van Norman accompanied Ms. Bealer to the Walmart parking lot where she was meeting the defendant to transfer custody of their daughter. He sat in the front passenger seat of the vehicle. He testified that the defendant was "a little irate" because they were late. When Defendant and Ms. Bealer argued over who would take the child out of the car, Mr. Van Norman stated that the defendant, with one hand, pushed Ms. Bealer twice around her chest and shoulder area.[7] Mr. Van Norman testified at that point, he attempted to step out of the vehicle when the defendant pulled his gun out of the holster and "held it to his side kind of not directly at me but towards me." After the defendant had secured his child in the car seat, Mr. Van Norman and the defendant had a verbal argument which was recorded by Ms. Bealer.[8]

The victim, whose current name is Haley Bealer Van Norman, testified that she previously lived with the defendant, whom she dated for three years until June or July of 2018, and he is the father of her child who was an infant on October 28, 2018. She stated that at the custody exchange, he yelled at her and "shoved" her when she attempted to calm him down. She blocked him from opening the car door because she "was scared he would hurt [the child] or something would happen and he'd drop and kill [the child]." She testified that when her husband

---

[6] Defendant provided a written statement to Deputy Goins, who had accompanied Sergeant Hardy to defendant's home, which was introduced into evidence.

[7] Defense counsel introduced into evidence, as a prior inconsistent statement, Mr. Van Norman's testimony at a domestic matter where he stated that Ms. Bealer stepped in front of defendant when he went to open the rear passenger door and said "I'll hand you my kid."

[8] The video of that altercation was introduced into evidence but not attached to this transcript.

told the defendant not to put his hands on her, the defendant walked around the car and pulled his gun out. The State introduced photographs of the victim taken after the incident, but she testified that there were no visible signs that she had suffered an injury because of the incident.

The trial continued on March 3, 2020. The State rested its case, after its motion to continue for an unavailable witness was denied.[9] Thereafter, the defendant moved for an acquittal. The request was denied. Devin McGovern, a defense witness, testified to being best friends with the victim and a friend and former co-worker of the defendant. He stated that Ms. Bealer asked him to tell the defendant that she would drop all charges if he gave up "full rights" to his daughter.[10] He was questioned regarding text messages and phone calls with Ms. Bealer in which he told her "[t]he only reason I'm going to testify for Jason is so that he can get his job back and so you can get some money."[11]

Defendant testified at trial. He stated that the victim arrived at Walmart to drop off his daughter almost thirty minutes late on October 28, 2018.[12] He testified that when he went to open the car door, the victim attempted to step in front of him and moved his arm. Defendant stated that Mr. Van Norman got out of the car and yelled at him not to push the victim. He denied using any force in any manner towards her. When he was buckling his daughter's car seat into the car, Mr. Van Norman yelled at him "Have fun with my daughter." He stated "that enraged me" and he began to yell at Mr. Van Norman as shown in the video. He testified that

---

[9] This witness was Tony Francisco who was available telephonically and called by the State in their rebuttal case.

[10] Ms. Bealer was called back to the stand by the State to deny any attempt to use the charges as a way to get custody of her daughter. She further stated that defendant told Mr. McGovern that he would pay child support if she dropped the charges. The State also called victim witness assistant coordinator Melanie Villemarette in rebuttal to testify that Mr. McGovern had not been threatened with perjury by the district attorney's office.

[11] Copies of text messages were introduced by the State as an exhibit, they were not attached to the transcript but Mr. McGovern testified to his warnings to the victim that he was not going to bring up anything to "mess up her marriage."

[12] Defendant testified that the Friday before the incident was the party's first child custody hearing with a follow up hearing scheduled for the following Monday. Defendant stated the hearing officer told Ms. Bealer that she would have to prove defendant to be an unfit parent if she wanted sole custody.

he never took his firearm out of the holster because would never put his career as a police officer in jeopardy.

Although unavailable to testify in person, Tony Francisco testified by telephone after agreement by the parties. Mr. Francisco, a Navy veteran and former Department of Defense police officer, had called the police after he saw an altercation in the Walmart parking lot on October 28, 2018. He saw a man and woman arguing near a vehicle approximately 50 yards from him. He testified he had a clear view of the rear of their vehicles and the parking lot was empty. Mr. Francisco heard the man scream "I want my child" and observed his arms "flailing" and the woman was "kind of backing up." He testified that he observed the defendant as "he reached up and he pulled a gun out of his waistband and started to point it around and basically at the ground." When somebody in the car said something, the defendant "walked over to the car, opened the door, stuck the gun in the car, pointed it at something or somebody in the car, and told them, 'Mind your own business, shut up,' and backed away." He recalled the defendant "pointed it in the car and then he backed up and he still had the gun kind of up about at a 45-degree angle. And then went back to the lady and, you know 'I want my daughter.' And, then put his gun away and walked up and took a child out of the vehicle and put the child in his truck." He testified that he did not see the defendant touch the woman at any point.

After the trial, the trial court stated "in light of all the testimony and evidence, the Court does find the defendant, Jason Dufrene, guilty as charged of domestic abuse battery".

**DISCUSSION**

Defendant's writ application alleges that the trial court erred in rendering a guilty verdict because the State failed to prove that he intentionally committed domestic abuse battery and that the entirety of the evidence was insufficient to

support the conviction. Defendant argues that Mr. Van Norman would not have been able to see any of the events from his position in the vehicle. He argues that Mr. Chauvin was the only one who was able to see the incident from inside the vehicle but he was not called to testify. He states that Mr. Francisco did not see the defendant touch the victim. Finally, he argues the victim did not report any injuries and photographs showed no visible signs of injury.

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a trier of fact that all the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 553 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). In cases involving circumstantial evidence, the trier of fact must exclude every reasonable hypothesis of innocence to convict. La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events, but whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.

Domestic abuse battery is defined as "the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." La. R.S. 14:35.3(A). The term "intentional," in the absence of qualifying provisions, refers to "general criminal intent." La. R.S. 14:11; *State v. Greenwood*, 12-281 (La. App. 5 Cir. 10/30/12), 103 So.3d 627, 631-32. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed

criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). In general intent crimes, "the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal." *State v. Harrell*, 18-63 (La. App. 5 Cir. 10/17/18)(citing *State v. Howard*, 94-23 (La. 6/3/94), 638 So.2d 216, 217. A "household member" includes a person "formerly living in the same residence with the offender and who . . .has been involved in a sexual or intimate relationship with the offender." La. R.S. 14:35.3(B)(5).

In the present case, we find that the State sufficiently proved the elements of domestic abuse battery. The victim testified that she had previously lived with and had a child with the defendant. Although the defendant argues his intent was not proven, the trial court heard testimony about the defendant's anger toward the victim for being late and her boyfriend for taunting him. Mr. Francisco testified to the defendant flailing his arms around and shouting.

As to evidence relating to the defendant's use of force on the victim, both the victim and Mr. Van Norman testified to the defendant pushing the victim's upper body twice. Defendant testified that he did not touch the victim. The trial judge considered the testimony of the witnesses and any inconsistencies therein and found the State's witnesses to be more credible than the defendant. When there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. *State v. White*, 472 So.2d 130, 132 (La. App. 5 Cir. 1985). The credibility of witnesses is within the sound discretion of the trier of fact who is free to accept or reject, in whole or in part, the testimony of any witness. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. The reviewing court is not "to second guess the rational credibility determinations of the fact finder at trial." *State v. Juluke*, 98–341 (La.1/8/99), 725

So.2d 1291, 1293.  In this case, where Mr. Francisco, an impartial witness, testified contrary to the defendant's claim that he never pulled out his weapon, the trial court would be justified in finding Mr. Van Norman and the victim's testimony more credible than the defendant's testimony.

Therefore, after a review of the transcript, we find that a rational trier of fact could have found the evidence sufficient to prove that defendant intentionally used force on the victim, a former household member, by pushing her in the chest and shoulder area.

**ERRORS PATENT**

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

The record does not reflect that the trial court ordered the mandatory fine required under the sentencing provision of domestic abuse battery.  At the time defendant committed the underlying offense, La. R.S. 14:35.3(C) required a fine of not less than three hundred dollars nor more than one thousand dollars.  A review of the schedule of court costs, fines, and fees form shows a $250 fine, the standard amount for "Non-drug cases." Although this Court has the authority to correct an illegal sentence at any time according to La. C.Cr.P. art. 882, the authority is permissive rather than mandatory.  *State v. Patin*, 19-157 (La. App. 5 Cir. 11/13/19), 285 So.3d 48, 59.  Therefore, we decline to exercise our authority to correct the illegally lenient sentence.

We also note that the sentencing transcript reflects the trial court did not advise the defendant of the provisions of La. C.Cr.P. art. 930.8 at the time of sentencing.   If a trial court fails to advise, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief through its opinion.  *State v. Becnel*, 18-549 (La. App. 5 Cir.

2/6/19), 265 So.3d 1017, 1022. Therefore, we inform the defendant that he has two years after the judgment of conviction and sentence has become final to seek post-conviction relief. However, for the defendant to have legal standing to apply for post-conviction relief, he must demonstrate a significant restraint upon his liberty. *State v. Smith*, 96-1798 (La. 10/21/97), 700 So.2d 493, 495. Thus, an application for post-conviction relief must be brought before his sentence is satisfied. *State v. Surus*, 13-903 (La. App. 3 Cir. 4/2/14), 135 So.3d 1236, 1242, *writ denied*, 14-882 (La. 2/6/15), 157 So.3d 1136.

**CONCLUSION**

For the reasons set forth herein, we deny the defendant's writ application and affirm his conviction and sentence.

.                                    **WRIT DENIED; CONVICTION AND SENTENCE AFFIRMED**.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 9, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-KP-290**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)

**MAILED**
MARIO A. SANCHEZ (RELATOR)          JASON DUFRENE  (RELATOR)
ATTORNEY AT LAW                      98 MASON STREET
2125 ST. CHARLES AVENUE              GRETNA, LA 70053
NEW ORLEANS, LA 70130